NELSON vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*March 24 — April 8, 1884.*

NEGLIGENCE: MASTER AND SERVANT. *(1) Court and jury. (2, 3) Servant does not agree never to err: Engineer running train under new time-table: Evidence of negligence.*

REVERSAL OF JUDGMENT. *(4) Special verdict: evasiveness: surplusage.*

1. The question of negligence is for the jury unless from the undisputed facts the inference of negligence or its absence is inevitable.

2. A locomotive engineer is not bound, at all hazards, to comprehend fully all the results of changes in the running time of trains made by a new time-table, and is not necessarily guilty of negligence in running his train contrary to the rules of such time-table on the first trip after it takes effect.

3. The length of time given to such engineer to examine the new time-table, his recent severe and protracted labors upon the road, his state of health and the fact that he had applied to be relieved from duty on such trip, the previous manner of running trains, and his understanding of the changes, are all pertinent to the issue of negligence.

4. Evasiveness or surplusage in the answers to questions submitted for a special verdict, if they could not possibly prejudice the appellant, will not work a reversal of the judgment.

APPEAL from the Circuit Court for *Racine* County.

The plaintiff was for several years a locomotive engineer in the service of the defendant company. Having been discharged from such service he brought this action to recover an unpaid balance alleged to be due him for wages, and claimed $185.75, and interest from March 1, 1881.

The answer of the company admits the service, but denies the indebtedness. It also contains a counterclaim for damages suffered by the company by the alleged negligence of the plaintiff to an amount exceeding the plaintiff's demand. The damages claimed were the result of a collision between the train on which the plaintiff was employed, known as train No. 7, and another train, designated as No. 38, which occurred under the following circumstances:

Previous to Sunday, February 20, 1881, under the railway time-table then in force, train No. 38 left Savanna, on the Mississippi river, going east, at 11:55 P. M., except Sundays. Train No. 7 left Freeport, Illinois, going west, daily, in the evening. These trains ran upon the Racine & Southwestern division of the defendant's railway, and met at an intermediate station called Hickory Grove on each night except Sundays. No. 38 had the right of way, and hence No. 7 waited for it at Hickory Grove on the nights

that No. 38 was on the road. On Sundays No. 7 ran through that station without stopping. On Sunday, February 20, 1881, a new time-table went into operation, under which train No. 38 left Savanna ten minutes later, to wit, at 12:05 A. M., and the running time of No. 7 was so adjusted that the two trains met as before at Hickory Grove. The time of meeting by the new time-table was 12:35 A. M. This time-table provided that (with two or three specified exceptions, not including No. 38) trains would not leave on Sunday. The result of this change of time was that No. 38 would not be on the road, as theretofore, on the night between Saturday and Sunday, but would be the following night.

The plaintiff received the new time-table at ten o'clock in the morning of Sunday, February 20th, and studied it with his conductor. He discovered that the time of the meeting of the two trains at Hickory Grove was a few minutes later than it had theretofore been, but he failed to discover that the change of time would bring No. 38 on the road that Sunday night. So he ran No. 7 through Hickory Grove without stopping, as was the custom theretofore, and a mile and a half west of that station his train collided with No. 38, and caused the damage complained of in the counterclaim. Both were freight trains.

The jury returned a special verdict in the form of answers to twenty-one questions submitted to them. The verdict finds the facts substantially as above stated, and further finds that the plaintiff examined the new time-card carefully for about two hours; that he exercised due care in such examination and in trying to learn and discharge, and in discharging, his duty. Judgment for the plaintiff was rendered on the special verdict for the sum which the jury found due him on account of his wages. The defendant moved the court to set aside the verdict and judgment and for a new trial, for the reasons, among others, that the

special verdict is inconsistent; that it is contrary to the evidence; and that the answers to certain questions are evasive. These questions and answers will be found in the opinion. The motion was denied. The defendant appeals from the judgment.

For the appellant there was a brief by *Fuller & Fuller* and *D. S. Wegg*, and oral argument by *P. Fuller* and *H. H. Field*.

For the respondent there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

LYON, J. The *gravamen* of the defense is the alleged negligence of the plaintiff which caused the collision of the two trains. The question whether the failure of the plaintiff to discover that the new time-table put train No. 38 on the road on the night the collision happened, was negligence, was submitted to the jury and resolved in the negative. It is now claimed, on behalf of the railway company, that the plaintiff was bound to discover from the time-table that No. 38 would be on the road that night, and to wait for it at Hickory Grove, and hence that his failure to do so was negligence in law. If this is a correct position, the defendant's counterclaim was established, and the plaintiff was not entitled to judgment for the balance of his wages, because the damages to the defendant, caused by his negligence, greatly exceeded his demand.

A vital question in the case, therefore,— one which underlies many, if not all, of the other propositions argued by the learned counsel for the defendant,— is, whether, under the facts of this case, the question of the alleged negligence of the plaintiff was a question of fact for the jury or of law for the court.

In *Hill v. Fond du Lac*, 56 Wis., 242, it is said, in the opinion by Mr. Justice CASSODAY: "Negligence is almost always to be deduced as an inference of fact from several

facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered. In such cases, if unbiased men would differ as to such inferences, then they cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout." Page 246. It is only when the inference of negligence, or the absence of it, from the undisputed facts proved, is inevitable that the court will direct a verdict. In all cases in which such inference is in doubt, giving to the testimony the construction most favorable to the party charged therewith, the question of negligence is for the jury. A very large proportion of actions for negligence are of the latter class. *Sutton v. Town of Wauwatosa*, 29 Wis., 21; *Kenworthy v. Town of Ironton*, 41 Wis., 647; *Townley v. C., M. & St. P. R'y Co.*, 53 Wis., 626.

In this case the facts are undisputed, but several of them are essential to be considered, and the relative weight of each determined, before the inference therefrom of negligence, or the want of it, can properly be drawn. We will briefly refer to them. The time-table which went into operation February 20, 1881, was first placed in the hands of defendant at ten o'clock A. M. of that day. It could be ascertained from such time-table that train No. 38 was not to start from Savanna until five minutes after midnight, but it required a mental process to determine that this slight change of ten minutes would put that train on the road on Sunday night instead of Saturday night, as theretofore. The plaintiff and his conductor would naturally examine first to see if there was a change in the time of their train, or in the hour or place of meeting other trains. This they did, and fully learned the time-table in these respects. But they both failed to discover the fact that a change of ten minutes in the running time of No. 38 worked a change of twenty-four

hours once in each week. In this particular they failed to trace out the change in time to its logical result.

It is impossible for us to say that the plaintiff had sufficient time after he received the time-table to master its contents and learn accurately the movements of all trains the running time of which affected the movements of his train. That time-table is in evidence, and to a layman it might appear difficult to understand it thoroughly after close study of it for two hours or a day. This might not appear so to an expert. But how the fact is this court does not know. If the defendant company did not furnish the new time-table to plaintiff long enough before he was required to start his train to enable him to master its contents, then certainly he should not be held negligent because he did not understand it fully, if he made a reasonable effort to understand it. This consideration alone is sufficient to send the question of his negligence to the jury. In this connection it may be observed that the fact that the conductor of No. 7 (presumably competent) failed also to discover that No. 38 should be on the road on that Sunday night, is not without significance in determining the question whether the plaintiff was negligent. It was for the jury, not the court, to say how much weight this fact was entitled to.

Moreover, it appeared that the plaintiff was continuously on duty with his locomotive from two A. M. on Friday until ten P. M. on Saturday — forty-four hours — save about three hours on Saturday morning. The weather was very severe. It was said in argument that the railway was impeded with snow, and the plaintiff during that time was engaged in clearing the track. The great snow-fall of that winter, and the difficulties encountered by all railway companies in this latitude in keeping their roads open, are matters of common knowledge, and we can readily believe the statement of counsel in this behalf. A jury might well say that a failure by the plaintiff fully to comprehend the time-table during

the brief time he had in which to examine it, was not negligence on his part, in view of the protracted and probably severe service which the company had so recently required of him. Under these circumstances it would be grossly unreasonable to require of him the same accuracy of reasoning and ability to comprehend all the results of the apparently slight change in the running time of No. 38, as might justly be required had he not been so recently subjected to such a severe and protracted physical and mental strain. The weight which ought to be given to this important element of the *res gestæ* is peculiarly for the determination of the jury.

The circuit court refused to allow the plaintiff to show that he was not feeling well on that Sunday (probably the result of his severe labors); that he wished to be relieved from duty on the night of the collision for that reason; and that the foreman of the company refused to relieve him. On what principle this testimony was rejected we are at a loss to comprehend. The testimony ought to have been received, although, probably, the error is not available to the plaintiff on this appeal.

The position that the plaintiff was bound, at all hazards, to understand and know fully all the results of the changes in the running time of trains made by the new time-table, is untenable. To sustain it would be to apply, in this case, a rule which has never been applied to any other class of actions for negligence. The true rule is thus stated by COOLEY, J., in *Page v. Wells*, 37 Mich., 415: "Whoever bargains to render services for another, undertakes for good faith and integrity, but he does not agree that he will commit no errors. For negligence, bad faith, or dishonesty he would be liable to his employer, but, if he is guilty of neither of these, the master or employer must submit to such incidental losses as may occur in the course of the employment, because these are incident to all avocations, and no one, by any im-

plication of law, ever undertakes to protect another against them."

Our conclusion is that the question of the plaintiff's alleged negligence was properly submitted to the jury.

It only remains to consider briefly certain other errors assigned upon the special verdict and upon the rulings of the circuit court on objections to testimony. There are four findings in the special verdict, which are claimed to be either inconsistent with each other or evasive. These consist of questions and answers, as follows:

" 1. Was the plaintiff in the exercise of due care in trying to learn and discharge, and in discharging, his duty as loco-motive engineer on February 20, and on February 21, 1881? *Answer.* Yes.

" 2. Was said *Samuel Nelson*, as engineer on train No. 7, bound to comply with and carry out the rules and regula-tions named in time-table No. 9? *A.* He was to do the best of his ability.

" 3. Did *Samuel Nelson*, on the 21st day of February, A. D. 1881, contrary to the rules and requirements of said time-table No. 9, cause said train No. 7, immediately upon its arrival at said station of Hickory Grove, to be started therefrom and move upon the track over which said train No. 38 was approaching the station of Hickory Grove? *A.* He did not fully understand new time-table.

" 4. Was said coming together and collision of said train No. 7 and said train No. 38 directly caused by said *Samuel Nelson* running said train No. 7 from the station of Hickory Grove contrary to the rules of time-table No. 9? *A.* Yes, not fully understanding time-table."

The claim of inconsistency in these findings is based upon the proposition, which we have above rejected, that the plaintiff, having run his train contrary to the rules of his time-table, was necessarily guilty of negligence. In the view we have taken of the case there is no inconsistency in the special

verdict. The second above question is purely one of law, and the jury answered it correctly. The answer to the third question is evasive in form, but the uncontradicted evidence answers it in the affirmative, and it was not necessary to submit it to the jury. The court will consider the question properly answered in determining its judgment, and the evasion in the answer cannot possibly prejudice the defendant. For like reasons the words "not fully understanding time-table," in the answer to the fourth question, will be rejected as surplusage. The qualification in both these findings is included in the finding that the plaintiff exercised ordinary care.

The interrogatories to the plaintiff, when testifying as a witness in his own behalf, to which objection was made and overruled, are these: "Did you ever meet the train on Sunday night, between Sunday and Monday, before this time-card went into operation? Was it your duty, had train No. 38 not been on the road that night, to have stopped at Hickory Grove? Did you discover that the time of meeting had been changed ten minutes?" All of these interrogatories call for and elicited testimony pertinent and material to the issue of negligence made by the pleadings and litigated on the trial. The testimony was clearly competent.

The record discloses no error of which the defendant can justly complain. The judgment of the circuit court must therefore be affirmed.

*By the Court.*— Judgment affirmed.

COLE, C. J., and TAYLOR, J., dissent.