PIETSCH and others, Respondents, vs. KRAUSE, imp., Appellant.

*December 2 — December 17, 1901.*

*Corporations: Promoters: Fraud: Pleading.*

In an action by stockholders on behalf of a corporation to recover illegal profits alleged to have been made by its promoters in fraud of the corporation, the complaint alleged generally that the "above-named defendants," which included the defendant K., were promoters of the corporation, and that the wrongs complained of were done by "said promoters." K.'s name, however, did not appear in the written agreement, specifically set out in the com-

plaint, by which the rights of the promoters in the alleged fraudulent transaction were to be governed and their interests fixed, nor was he included among the persons alleged to have profited by the division of the spoils, although the entire amount of the alleged fraudulent misappropriation was thereby accounted for. *Held,* that the latter allegations, being specific, were controlling and showed that K. was not a promoter, and that therefore no cause of action was stated against him, since all the wrongs complained of were alleged to have been done by promoters.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge.    *Reversed.*

This is an action in equity brought by stockholders of the Sylvan Dell Land Company, a corporation, on behalf of the corporation, to recover from the defendants, some of whom are directors of the corporation, illegal profits claimed to have been made by said defendants as promoters of the corporation.    The defendant *Krause* was not a party to the action as originally brought, but was subsequently brought in on motion of the remaining defendants.    Thereupon an amended complaint was made and served, which commences as follows:

" The plaintiffs above named complain of the above-named defendants and the defendant *Max C. Krause,* who by order of the court is now brought in, and for cause of action respectfully allege and show to the court."

The complaint then proceeds to allege the due incorporation of the Sylvan Dell Land Company in the year 1892 for the purpose of buying and selling real estate in the county of Racine, and that the same purported to be organized with a capital stock of $203,400, divided into 2,034 shares, of $100 each, and, further, that the plaintiffs are members and stockholders of said corporation by subscription or by subsequent purchases of stock, and bring this action for the benefit of all stockholders in said corporation.

"(3) That the above-named individual defendants ' and one Henry Texter were promoters of said corporation, and held themselves forth to the plaintiffs and to others as the agents of the said corporation in the purchase and transfers

of real estate, and in the sale and transfers of stock in the said corporation, and are hereinafter referred to as promoters; that on or about the 7th day of November, A. D. 1894, the said Henry Texter, referred to as one of the promoters, died, being then a resident of Bayfield county, in this state; that thereafter, and prior to the commencement of this action, to wit, on or about the 3d day of January, A. D. 1895, the defendant Clinton Texter was by the county court of said Bayfield county duly appointed administrator of the estate of the said deceased; that he thereupon duly qualified and entered upon the discharge of his duties as such administrator, and since that time has been, and now is, the duly appointed, qualified, and acting administrator of the estate of said deceased.

"(4) The plaintiffs further aver that the said promoters, a short time prior to the organization of the said company, conceived the idea and agreed together secretly to procure options or contracts to purchase the tracts of land in Racine county hereinafter described, and thereupon to promote the organization of the defendant corporation, and sell or convey said lands to it at a price nearly double their actual value, and secretly procure to be issued to themselves by said corporation a very large majority of the stock therein as and for the difference between said purchase and selling price, without paying anything therefor, and procuring others to purchase the remaining shares of stock for money consideration, reserving to themselves commission on such sales, and by such and other acts in harmony with said scheme, as hereinafter detailed, to cheat and defraud the said corporation and other subscribers and purchasers of stock; that in pursuance of such plan, and in carrying out the same, said defendant E. P. Thomas, for himself, and as the agent and on behalf of part, if not all, of the remaining individual defendants, and said Henry Texter, did, on or about the 21st day of July, A. D. 1892, enter into and procure an option or land contract from one Nicholas Fratt for the purchase of a certain tract of land in said Racine county, said to contain one hundred and sixteen and forty-six hundredths acres, for the sum of forty-six thousand five hundred and eighty-four dollars ($46,584), paying down upon said option or contract but a small sum; that the following is a description of said land, and the same is hereinafter, for brevity and convenience, referred to and called the 'Fratt tract,' to wit [here follows a description of the

'Fratt tract']; that subsequently, and in further carrying out said scheme, and on or about the 21st day of July, A. D. 1892, the said Henry Texter, deceased, acting for and on behalf of himself and part, if not all, of the remaining individual defendants, procured to be assigned to him by one Charles L. Dana an option or right to purchase another tract of land in said Racine county, owned by one L. B. Lathrop, consisting of eighty acres; that the option or contract price for said tract, as procured by said Texter, was for a sum not exceeding sixteen thousand dollars ($16,000), and the amount paid down by the said Henry Texter was only a nominal sum; that the following is a description of said land, and the same is hereinafter, for brevity and convenience, referred to and called the 'Lathrop tract,' to wit [here follows a description of the Lathrop tract]; that subsequently the said named Thomas and Texter from time to time, and up to the date of the organization of the defendant corporation, in form assigned interests and shares in said contracts to others of the said promoters, none of which contracts or assignments, however, were placed on record or made public.

"And plaintiffs further, in this behalf, aver that the defendants never in fact purchased or owned said lands, but said contracts and other instruments were executed and procured for the sole benefit of the said defendant corporation and for the purpose of concealing and covering up the said fraud being practiced upon the same by the said promoters; that the total agreed cost to said promoters of the said two tracts of land was not to exceed the aggregate of the sums above named, to wit, forty-six thousand five hundred and eighty-four dollars ($46,584), and sixteen thousand dollars ($16,000), or a total of sixty-two thousand five hundred and eighty-four dollars ($62,584), and that the said promoters, in furtherance of said scheme, agreed together to syndicate the said two tracts of land, containing in all one hundred ninety-six and one half (196½) acres, less three acres, at six hundred dollars per acre, and that this was done, not for the purpose of computing the price to be paid by the said promoters, but for the sole purpose of forming a basis for syndicating the said lands and reserving to themselves a large and secret profit; that at the same time the said promoters further agreed among themselves that the capital stock of the corporation should consist of two thousand and thirty-four (2,034) shares, of the par value of one hundred dollars

per share; that said promoters were to have of said shares, for their profits, one thousand four hundred and seventy (1,470) shares, with a credit of the payment on each share of thirty-four dollars, or about the sum of fifty thousand dollars ($50,000), without any payment therefor; that five hundred and sixty-four shares only were, according to said scheme, to be sold for cash, the amount received therefor to be used in making first payments upon the purchase price of said tracts of land, and leaving about the sum of forty-six thousand nine hundred and forty-four dollars ($46,944) purchase price to be secured by mortgage.

"(5) That the said promoters, in furtherance of said scheme, and in execution thereof, among other things, secretly entered into an agreement, which agreement expressly provided for a partnership arrangement among said promoters for the sole purpose of purchasing and syndicating the said two tracts of land as hereinbefore described, and expressly provided for the shares or portions of the profits to be made by such syndicating which each of said parties was to receive, and also expressly provided that any and all money paid by any of said promoters was to be returned to him out of moneys received on sales of stock; that said agreement is in words and figures following, to wit:

"'It is hereby mutually agreed by and between C. W. Milbrath & Co., Thomas Hanson, Robert Kretschmar, Joseph Lindemann, Ramsey and Thomas, Henry Texter, Miller & Okershauser, and Amann & Texter, to enter into a partnership for the sole and only purpose of purchasing and syndicating the N. D. Fratt and C. L. Dana farms, at Racine, Wisconsin, and to put the same upon the market. It is further mutually understood that C. W. Milbrath & Co. are to have a one-eighth of the profits of such purchase, syndicating, and sale; that Joseph Lindemann is to have a one-eighth of the profits of such syndicating and sale; that Ramsey & Thomas are to have a one-eighth of the profits of such purchase, syndicating, and sale; that Miller & Okershauser are to have a one-eighth of the profits of such purchase, syndicating, and sale; that Amann & Texter are to have a one-eighth of the profits of such purchase, syndicating, and sale; that Robert Kretschmar is to have a one-eighth of the profits of such purchase, syndicating, and sale; that Henry Texter is to have a one-eighth of the profits of such purchase, syndicating, and sale; that Thomas Hanson

Pietsch v. Krause, 112 Wis. 418.

is to have a one-eighth of the profits of such purchase, syndicating, and sale. This agreement is to be in force until the proportionate amount of stock is turned over to the above-named persons; that any and all money paid in by any person is to be returned to him as soon as necessary stock is sold.

" ' In witness whereof, we have hereunto set our hands and seals the day and year first above written.

" ' C. W MILBRATH & Co.  [Seal.]
" ' JOSEPH LINDEMANN.  [Seal.]
" ' HENRY TEXTER.  [Seal.]
" ' AMANN & TEXTER.  [Seal.]

" ' In presence of Jos. A. Smez.'

" (6) These plaintiffs further show: That in furtherance of said scheme the said promoters prepared and caused to be signed, prior to the organization of the defendant corporation, and circulated, a subscription list, of which the following is a copy, to wit:

" ' Subscription List of the Sylvan Dell Land Company, Milwaukee, Wisconsin. We, the undersigned, do hereby subscribe to the number of shares set opposite our respective names, to the capital stock of the Sylvan Dell Land Company of Milwaukee, to be incorporated with a capital stock of $203,400, to be divided into 2,034 shares, of the par value of one hundred dollars each share. Amount paid in, $34 per share, for which each of us agree to pay for on demand. The object of this company is to purchase and to improve 193½ acres of land in Racine, Wisconsin.' ·

" That said subscription agreement was signed by most of the said promoters and others, including several of these plaintiffs. That the said promoters who signed the said subscription agreement set down opposite their names the number of shares which they, and each of them, agreed to take, and the amount of cash which they, and each of them, agreed to pay, in manner as follows:

|  | Cash. | No. of shares. |
|---|---|---|
| C. W. Milbrath & Co. | $6,256 | 184 |
| Jos. Lindemann & Co. | 6,256 | 184 |
| Rob. Kretschmar, Sr. | 6,256 | 184 |
| Thomas A. Hanson | 6,256 | 184 |
| George J. Amann | 3,128 | 92 |
| R. W. Mueller | 1,020 | 30 |
| E. P. Thomas | 850 | 25 |
| Thomas F. Ramsey | 850 | 25 |
| William Gutnecht | 340 | 10 |
| C. Evers | 850 | 25 |

" That the said C. W. Milbrath & Co. was at that time a copartnership composed of the defendants Charles W. Milbrath, Henry C. Roethlisberger, and Edward J. Wagner. That said subscriptions of the defendants to said agreement for capital stock, and to other agreements for stock which were made at said time, were made with the intent to be taken and understood as *bona fide* subscriptions, whereas, in truth and in fact, they were not *bona fide*, but were made for the purpose of deceiving others who should subscribe for stock in said corporation; and said defendants did not intend to, and never did, pay into said company thirty-four dollars ($34) per share for the stock received by them. That the number of shares subscribed for by said promoters, and for which, by the terms of said subscription agreement, they agreed to pay thirty-four dollars ($34) per share on demand, included the one thousand four hundred and seventy (1,470) shares which they had prior thereto secretly agreed among themselves to divide between them as profits. That such of the plaintiffs as signed such subscription agreement and agreed to take stock in said corporation to be formed were wholly ignorant of said scheme of said promoters, and were misled by the subscriptions of said parties as aforesaid.

"(7) That on or before the 19th day of September, A. D. 1892, the said Sylvan Dell Land Company was, pursuant to said scheme, incorporated, with a capital stock of two hundred and three thousand four hundred dollars ($203,400), divided into two thousand and thirty-four (2,034) shares, of one hundred dollars each; that the articles of incorporation were signed by certain of the above-named promoters and defendants, to wit, Robert Kretschmar, C. W. Milbrath, Joseph Lindemann, Henry Texter, and Thomas A. Hanson, as incorporators; that the said articles were recorded in the office of the register of deeds of Milwaukee county on the 21st day of September, A. D. 1892, and a copy thereof filed in the office of the secretary of state of Wisconsin on the 22d day of September, A. D. 1892; that the first board of directors of the said Sylvan Dell Land Company was composed as follows, to wit: C. W. Milbrath, *M. C. Krause*, George J. Amann, Robert W. Mueller, William Okershauser, Thomas A. Hanson, Robert Kretschmar, Joseph Lindemann, and Henry Texter; that the said board of directors was composed almost entirely of the persons who were promoters of the said corporation, defendants herein, and participants in

the scheme hereinbefore particularly described; that in pursuance of said scheme, and in carrying out the same, said promoters subsequently, and on the 23d day of September, A. D. 1892, caused a deed of said 'Fratt tract' to be made, executed, and delivered to said Henry Texter alone, although the other promoters had equal interest with said Texter in said scheme, but such deed was made to said Henry Texter alone for the express purpose of concealment, and because of the fact that the said Henry Texter was not a resident of said Milwaukee county, and could not readily be seen by the plaintiff or other persons, subscribers for stock in said corporation; that in furtherance of said fraudulent scheme, and to mislead, cover up, and conceal the true fact as to the purchase price of said land, said promoters caused to be inserted as consideration price in said deed the following language, to wit: 'One dollar and other good and valuable consideration;' that on the same day the promoters, for like reasons, caused the deed of the said 'Lathrop tract' to be made, executed, and delivered to said Henry Texter alone, and in like manner, and for like purposes, caused to be inserted as consideration price in said deed 'one dollar and other good and valuable consideration.' And plaintiffs further show that immediately upon the execution and delivery of said two deeds, and prior to the organization of the said Sylvan Dell Land Company, and without any action by the stockholders thereof, and before the stock was in fact subscribed for, but in pursuance of said fraudulent scheme, said promoters, on the same day of the execution and delivery of the said two deeds to said Henry Texter, to wit, on the 23d day of September, A. D. 1892, caused a deed of said 'Fratt tract' and said 'Lathrop tract' to be made by the said Henry Texter, a single man, in which the grantee named was the defendant corporation, Sylvan Dell Land Company, and that said promoters caused to be inserted as consideration price in said deed the sum of one hundred and sixteen thousand one hundred dollars ($116,100), and also caused to be inserted in said deed a provision that the same was free and clear from all incumbrances except certain mortgages, amounting in the aggregate to forty-six thousand two hundred and thirty-eight dollars ($46,238), 'which the party of the second part [being the said Sylvan Dell Land Company] hereby assumes and agrees to pay;' that each of said deeds was immediately, and on the day of the execution thereof,

delivered by the said Henry Texter to the register of deeds of Racine county, and on said day duly recorded in said register's office; that all of said transactions with reference to the execution, delivery, and recording of said deeds were without any act, direction, or approval on the part of said defendant corporation; that in fact no meeting of said corporation, or the stockholders thereof, was held until in October, A. D. 1892, and no action whatever was taken by said company, or the directors thereof in meeting assembled, until on or about the 6th day of October, A. D. 1892.

"And plaintiffs further show: That at the meeting of the board of directors, almost wholly composed of, and in fact controlled by, said promoters, held on said 6th day of October, A. D. 1892, pursuant to said scheme and agreement to cheat and defraud, a resolution was unanimously adopted setting apart five hundred sixty-two (562) shares of the stock of said company, and being all of the stock of said company exclusive of the stock parceled out to and divided up among said promoters, to be known as 'treasury stock,' and to be sold, and at said meeting further unanimously resolved that out of the sales of shares of treasury stock aforesaid a commission of two dollars per share be allowed and paid to persons entitled thereto, in effecting a sale of such treasury stock.  That thereupon, and pursuant to said scheme, each of the individual defendants and promoters became the agent and solicitor for the sale of stock in the defendant corporation, and from time to time made sales thereof to divers persons; many shares thereof being sold to these plaintiffs.  That some of the defendants, for the purpose of further concealing the said scheme, themselves in form subscribed for some of said treasury stock at said discount of two dollars ($2) per share, and then sold out the same, issued in form and sold and transferred as their own stock, and not the stock of the said corporation, all for the purpose of cheating and defrauding the said corporation, and cheating and deceiving the persons who became subscribers to said stock.  That, as now appears by the books of said corporation, there was sold out of said treasury stock during the first year five hundred twenty-five (525) shares, at the rate of thirty-four dollars per share, upon which was allowed and paid to said promoters, as agents, the total sum of one thousand and fifty dollars ($1,050).  That said stock was largely taken and is now principally held by these

plaintiffs, and is the only stock issued by the said company upon which payment of cash was in fact made to said corporation. That in furtherance of said scheme, and as inducement to secure the subscription and purchase of stock by these plaintiffs, it was represented to these plaintiffs by the said promoters and agents that the purchase price of said two tracts of land was the sum of one hundred and sixteen thousand one hundred dollars ($116,100); that that was the sum actually and necessarily paid therefor by Mr. Texter, and the same could not be bought for a less sum; and it was further by them represented that all stock was being paid for at the rate of thirty-four dollars per share, and that none were getting stock for any less sum or upon any basis or agreement differing from that offered to plaintiff subscribers and purchasers; that all were 'on the ground floor,' and no profit or advantage was being given to one not shared by all; that thirty-four dollars paid in full for a share of stock, and each share was nonassessable. That it was expressly represented to the plaintiffs, as inducement to become members and stockholders of the said corporation, by the promoters, defendants above named, that the said mentioned tracts of land in Racine county, Wisconsin, were to be purchased, and that they were in fact purchased, at the price of one hundred and sixteen thousand one hundred dollars ($116,100), and that they could not be secured at a less price; that the above-named sum represented the original prices for the said lands; that the lands were well worth that amount of money, and could be disposed of at a good profit if secured at the said price; that the said promoters were going into the said corporation on the same basis as the plaintiffs, and upon the same basis as all the other stockholders who became such either by subscription or purchase; that the said promoters were not making or reserving to themselves any profit whatever.

"Plaintiffs show that they believed the representations of the defendants on this behalf, and that the said lands cost the said promoters the sum of one hundred and sixteen thousand one hundred dollars, and that the said company was receiving the lands at original prices, and that the lands were well worth the above-named sum, and could be disposed of at a profit, and that the defendants, promoters of said corporation, were entering the corporation as members and stockholders on the same basis as the plaintiffs and all

other stockholders, and that said defendants were not making any profit to themselves out of the promotion or incorporation of the said company. Plaintiffs further allege that the said representations were false and fraudulent, and made with intent to deceive and cheat the plaintiffs and others, and that they were so deceived and cheated by the said promoters of the said corporation; that said representations were made both before and after the incorporation of the said company, and were designed to, and did, induce the plaintiffs and others to subscribe for stock and to purchase stock in the said defendant company in reliance upon and acting upon the said false and fraudulent representations; that in truth and in fact the said defendants, promoters of the said corporation, procured the purchase of the said lands at a sum much less than that which was represented to the plaintiffs and others as the price to be paid for the lands, as more particularly herein set forth, and said promoters did in fact make a large and secret profit to themselves out of the promotion and organization of the said company, as contemplated and planned by them from the beginning, in fraud of and to the damage of the said Sylvan Dell Land Company, and of the plaintiffs and other stockholders of the said company.

"(8) Plaintiffs further allege that the said promoters, in carrying out said scheme, did cause to be issued to themselves during the first year of the existence of the said corporation the said number of shares, to wit, one thousand and four hundred and seventy (1,470), as shown by the books of the said company, and that such stock was issued to the said promoters and defendants during the first year of the existence of the said corporation as follows, to wit: To George J. Amann, 113 shares; to Thomas Hanson, 225 shares; to Joseph Lindemann, 120 shares; to E. P. Thomas, 92 shares; to Henry Texter, 290 shares; to Robert Kretschmar, 210 shares; to C. W. Milbrath & Co., 210 shares; to William C. Okershauser, 105 shares; to R. W. Mueller, 105 shares; making a total of said 1,470 shares so issued to the said promoters in pursuance of the said scheme to cheat and defraud the said corporation and the stockholders thereof. And the plaintiffs allege that the said promoters did in fact secretly and fraudulently cause to be returned to them all moneys by them paid to the said company upon the said 1,470 shares of stock, or such moneys, if any, as were in fact paid by

them upon the said shares, and also the sum of two dollars per share upon the said 525 shares, in pursuance and execution of said scheme. And plaintiffs allege, upon information and belief, that all the shares now held by the above-named promoters and defendants, or by the representatives of any of them, were obtained fraudulently, and without any consideration passing in fact to the said corporation, for its own use and benefit, from the said promoters and defendants, or their representatives, or any or either of them, and that such shares so held are in truth and in fact unpaid for in any way, and that said company is entitled to the possession thereof, or to the money therefor on the same basis as that upon which the other shareholders have become members and stockholders in the said corporation, and to damages for the fraud so perpetrated upon it.

" (9) Plaintiffs further show that the books and accounts of the secretary of the said Sylvan Dell Land Company, and the first annual report of that officer, made and dated October 7, A. D. 1893, in furtherance of said scheme of concealment and fraud, show that the secretary received during the first year of the existence of said corporation, from the sale of stock alone, the sum of sixty-seven thousand eight hundred and ninety-eight dollars ($67,898), and that the total receipts for that year amounted to the sum of seventy-two thousand eight hundred and fifty-six and eighty-eight hundredths dollars ($72,856.88), exclusive of moneys claimed to have been advanced, and also represented that there was paid in cash on the said lands during the said first year of the existence of the said corporation the sum of sixty-nine thousand eight hundred sixty-two dollars ($69,862), whereas, in truth and in fact, no such sum as reported was paid to said corporation or disbursed by it, but such report and misrepresentation of fact was made in conformity with said scheme to cheat, deceive, and defraud, and for the express purpose of covering up and concealing the true purchase price of said land, the disposal and conversion of said 1,470 shares of the capital stock for nothing, and other facts hereinbefore alleged."

"(13) That in all the transactions in regard to said lands, and in securing subscribers to the stock of said corporation, and in the promotion and organization of the said corporation, and in completing the purchase of the said lands according to the terms herein set forth, and for the prices

named herein, and in the transfer of the same to the corporation, the defendants above named were in all such transactions the promoters, agents, and trustees of said corporation, and as such could not, by any pretext whatever, secure for themselves any profit whatever at the expense of said corporation or of its stockholders; that the plaintiffs were led to believe, and did believe, that the said promoters were to become members of the said corporation on the same basis as the plaintiffs, and on the same basis as the other persons who became or might become stockholders in the corporation, and had the plaintiffs known that the representations of the promoters as aforesaid were false and fraudulent, and had the plaintiffs known that the said lands could be purchased at a price far below that which it was represented to them by the said promoters was the cheapest price at which the said lands could be procured, and had the plaintiffs known that the said promoters were to make a large profit to themselves from the purchase of said lands and sale thereof to the said corporation, and that all did not stand equal, and that said stock was assessable, and other matters and concealments and misrepresentations hereinbefore alleged, the plaintiffs would not have become subscribers to or purchasers of stock, or members or shareholders of said corporation."

The complaint further alleges, in substance, that assessments of $3.50 per share and $1 per share were made in September, 1893, and in October, 1895, respectively, which would not have been necessary except for the fraud of the said defendants, and that part of said plaintiffs have been compelled to pay said assessments, and that notices have been sent the plaintiffs of another assessment of $1 per share, stating that the shares of the plaintiffs will be sold if said assessment is not paid. The complaint also alleges that the plaintiffs first learned of said frauds in the latter part of the year 1898, and proceeded at once to take steps to bring this action; that they demanded of the board of directors of said corporation that this action be brought on behalf of the corporation, but that said directors refused to bring the same, and proceeded to levy another assessment upon all the

stock, including that held by the plaintiffs, and threaten to take steps to collect the same.

Judgment is demanded on behalf of the corporation against the defendants for the sum of $55,000, with interest from October 7, 1893, and that the plaintiffs recover all damage and loss sustained by them by reason of the fraud of the defendants, and that the officers of the corporation be restrained from selling or disposing of plaintiffs' stock to pay said illegal assessment, and that the plaintiffs have such other relief as may be just and equitable.

To this complaint a general demurrer was interposed by the defendant *Krause,* which was overruled, and the defendant *Krause* appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles,* and oral argument by *T. W. Spence.*

For the defendants Milbrath and others there was a brief by *Julius E. Roehr* and *Timlin, Glicksman & Conway.*

For the respondents the cause was submitted on the brief of *Geo. L. Williams.*

WINSLOW, J. This is an action by stockholders on behalf of a corporation, whose officers refuse to sue, to recover of promoters a large amount of illegal profits alleged to have been made by said promoters in fraud of the corporation. The allegations seem entirely sufficient to charge the promoters with liability, under the repeated decisions of this court. At least, no contention to the contrary is here made. But it is claimed that the complaint nowhere connects *Mr. Krause* with any fraud or wrong committed upon the corporation, and with this contention we are forced to agree. The specific fraud charged is that certain "promoters" obtained secret options upon real property at a certain price, and then formed a corporation to buy the property, and obtained subscriptions to stock upon the basis of a certain purchase price of the land, much in excess of its actual

price, the fact of which excess was concealed from the new subscribers, and thus obtained their stock for nothing, when, as matter of fact, they should have paid, and gave out and pretended that they were paying, about $50,000 therefor. Nowhere in the complaint is it specifically charged that *Mr. Krause* was one of the promoters, or that he obtained any of the fraudulent stock. As pointed out by the appellant's counsel, his name is mentioned but three times: First, in the title; second, in the opening paragraph; and, third, in the list of the first board of directors of the company, given in the seventh paragraph. It is true that it is alleged generally in paragraph 3 of the complaint that the "above-named defendants and one Henry Texter were promoters of said corporation," and subsequently through the complaint that the wrongs complained of were done by "said promoters," but in the fifth paragraph of the complaint the agreement which the promoters made with each other is set forth at length and the names of the promoters given, and the name of the defendant *Krause* is not to be found; in the sixth paragraph the original list of subscriptions to the capital stock made by the promoters is given, and the name of the defendant *Krause* does not appear; and in the eighth paragraph of the complaint, where the full fruition of the fraudulent scheme of the promoters is alleged, it is stated that "the *said promoters*" caused said 1,470 shares of stock to be issued to themselves, and the exact number of shares issued to each promoter is given, and not a single share is charged to have been issued to *Krause*, although the whole 1,470 shares are accounted for. It might well be claimed that were the general statement in paragraph 3, to the effect that the defendants were promoters, the only statement upon the subject in the complaint, it would be sufficient, in connection with the subsequent allegations of fraud by the "said promoters," to charge *Krause* with liability as a promoter; but when the complaint specifically sets forth the

written agreement made between the promoters, by which their rights were to be governed and their interests fixed in the enterprise, and it appears thereby that *Krause* was not one of them, and when the complaint also sets forth the division of the spoil between the promoters, and shows that appellant was not one of them, these statements must certainly be held as controlling, and settling the question conclusively as to who were promoters, for the reason that they are special allegations upon a particular subject, and must be held to control mere general allegations. They settle the fact that *Krause* was not a promoter, and as all the wrongs complained of were done by promoters, it is evident that no cause of action is stated against *Krause*, and that his demurrer should have been sustained.

*By the Court.*— Order reversed, and action remanded with directions to sustain the demurrer to the complaint.