FOREST COUNTY, Respondent, vs. SHAW, Appellant.

*May 16—June 4, 1912.*

*Counties: Committees of county board: Appointment of outsider:*
*Liability for his acts resulting in loss: Fraud: Pleading.*

1. A county board has no power to appoint as a member of a com-
mittee thereof a person not a member of the board.

2. One not a member of the county board who is appointed to act
on a committee thereof is a mere volunteer, having no official
authority.

3. One who undertakes without compensation to act with a com-
mittee and assist a county board in negotiating the sale of
county bonds is not liable to the county for loss caused by an
honest mistake in judgment.

4. In law every intendment that harmonizes with honesty and fair
dealing must be presumed in the light of the alleged facts.

5. A mere averment in a pleading that acts and omissions were
fraudulent adds nothing to the pleading, nor does it change
the essential character of such acts and omissions.

6. A complaint alleging that defendant, not a member of the county
board, was appointed and served on its committee to negotiate
the sale of county bonds to the best and highest bidder; that
two bids for the bonds were received, the lower of which was
accepted; that defendant controlled the action of the commit-
tee and, through fraud and corruption on his part and by col-
lusion with the bidder, induced acceptance of such lower bid,
thereby causing pecuniary loss to the county; but that the
details and character of such corruption, fraud, and collusion
are to the plaintiff unknown—does not state facts showing that
defendant committed a fraud in the transaction, and hence
states no cause of action.

APPEAL from an order of the circuit court for Forest
county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The complaint in this action is as follows:

"The complaint of the plaintiff, by A. C. Umbreit, district
attorney for *Forest County,* for cause of action against the
above named defendant, alleges:

"First. That, at all the times herein stated, the plaintiff
was and now is a body corporate, organized as a county and
political subdivision of the state of Wisconsin.

"Second. That, on or about the 23d day of September, 1908, the board of supervisors for *Forest County,* by resolution then and there duly adopted, decided and determined to build and erect a new court house for said county, and decided and determined that the bonds of the county, known as court-house bonds, be issued in the sum of fifty-five thousand ($55,000) dollars, for the purpose of furnishing money for the building of said new court house, and, by said resolution so duly adopted, appointed a committee of three, known as the bonding committee, and authorized and empowered said committee to negotiate, sell, dispose of and deliver said new court-house bonds, and to act in the negotiating, selling, disposing of and delivering of said bonds, on and in behalf of said board of supervisors, and, by said resolution so duly adopted, directed and commanded that said committee negotiate, sell, dispose of and deliver said bonds to the highest and best bidder therefor, and, by said resolution so duly adopted by said board of supervisors, the said defendant, *Samuel Shaw,* J. P. Libby and H. R. Messer were duly appointed such bonding committee, and, by such appointment, were directed and commanded to represent the said board of supervisors and the said plaintiff, in the matter of negotiating, selling, disposing of and delivering said bonds, for the building and erection of said new court house; that said J. P. Libby and said H. R. Messer were then and there members of said board of supervisors, and the said defendant, *Samuel Shaw,* was not a member of said board of supervisors, but accepted said appointment, and agreed and undertook to act for and represent said board of supervisors as a member of said bonding committee; that said J. P. Libby died before the commencement of this action, and that said H. R. Messer left the state of Wisconsin, and removed to a distant part of the United States, previous to the commencement of this action, and the present residence of H. R. Messer is to this plaintiff unknown.

"Third. That, after the appointment of said defendant as a member of said bonding committee, and during all the time said bonding committee was in existence, and acted and assumed to act as the agent and representative of said board of supervisors, the said defendant dominated and controlled the said committee, directed and determined the action of said committee in the matters submitted to it by the said board of

supervisors, and all action taken by said committee, within its jurisdiction, was caused to be so done by the said defendant.

"Fourth. That, after the appointment of said committee, and the said defendant as a member of said committee, on or about the 23d day of September, 1908, the said committee duly met on said 23d day of September, 1908, and the said meeting adjourned to the 24th day of September, 1908, at which date the said committee organized by electing a chairman and secretary, and the said meeting, on said day, determined to address, by letter, a large number of bonding houses, that is persons, corporations and partnerships dealing in municipal bonds, by purchasing them from municipalities, and offering them to the public for sale, requesting said bonding houses so addressed to offer bids for the purchase of said $55,000 of the bonds of *Forest County,* for the building of the new court house, and known and designated as court-house bonds.

"Fifth. That, at the meeting of said bonding committee held on the 3d day of October, 1908, the bids received for the purchase of said court-house (bonds) were opened, inspected and examined, and said committee had received in response to requests for bids for the purchase of said court-house bonds two bids from bonding houses, to wit, one bid from Thomas J. Bolger Company of Chicago, Illinois, which bid is hereto attached, marked Exhibit 'A' and made a part of this complaint, and another bid from the Harris Trust & Savings Bank of Chicago, Illinois, a copy of which bid is hereto attached, marked Exhibit 'B' and made a part of this complaint, to which said bid of said Harris Trust & Savings Bank was attached a proposed form of bond, and also a certified check in the sum of five hundred fifty ($550) dollars, payable to the order of the county treasurer of *Forest County;* that on said 3d day of October, 1908, the said committee, dominated and controlled, as aforesaid, by the said defendant, accepted the bid offered and submitted by the Thomas Bolger Company on the ground that said committee considered the said bid the best offer and approved said bid, together with the conditions therein named, notwithstanding the fact that the bid submitted by the Harris Trust & Savings Bank offered to pay the said county in purchasing said bonds the sum of three thousand three hundred twenty-five ($3,325)

dollars as a bonus and premium, whereas the bid submitted by the Thomas J. Bolger Company offered to pay but par for said bonds and to pay but five thousand ($5,000) dollars on the delivery of said bonds and retaining fifty thousand ($50,000) dollars to be paid on demand as might be required as the work of building said court house proceeded, and that said committee, influenced and directed by said defendant, in rejecting the bid of the Harris Trust & Savings Bank, and accepting the bid of the Thomas J. Bolger Company, wilfully and without excuse sacrificed the interests of this plaintiff, and caused the said county to lose the said sum of three thousand three hundred twenty-five ($3,325) dollars.

"Sixth. That the action of the said bonding committee, induced and caused by the said defendant, in accepting the bid of the said Thomas J. Bolger Company for the said courthouse bonds, and in rejecting the bid of the Harris Trust & Savings.Bank, was in utter disregard and in violation of the said resolution duly adopted, directing and commanding the said committee to negotiate, sell, dispose of and deliver said court-house bonds to the highest and best bidder therefor, and said committee and this defendant, in so acting, utterly disregarded the said resolution of said county board, and the acceptance of the said bid of the said Thomas J. Bolger Company was a disobedience of the commands of the said board of supervisors contained in said resolution, and in violation of the trust imposed in said committee and in said defendant, by the said board of supervisors, the violation of which said trust by said committee and by this defendant caused the loss to this plaintiff of said sum of three thousand three hundred twenty-five ($3,325) dollars, the bonus or premium so offered by the said Harris Trust & Savings Bank for said court-house bonds.

"For a second and separate cause of action the plaintiff alleges:

"First. That the plaintiff refers to and alleges all the allegations of the foregoing first cause of action, as far as applicable hereto; and

"Second. That the acceptance of the bid of the said Thomas J. Bolger Company, for the said court-house bonds, by the said bonding committee, was induced by the said defendant, while a member of said committee, through fraud and corruption on the part of the said defendant, and by collusion

with one W. H. H. Cash, then and there representing the said Thomas J. Bolger Company, as plaintiff is informed and verily believes, and that the details and character of such corruption, fraud and collusion are to this plaintiff unknown; and that the said defendant, controlling and directing the action and the proceedings of said bonding committee as aforesaid, induced the said committee to record in its minutes of the proceedings had by it, by indorsing below and at the foot of the bid filed by the said Thomas J. Bolger Company the following: 'The above proposition being considered the best offered is hereby accepted and approved, together with the conditions therein named.  Dated at Crandon, Wisconsin, this 3d day of October, A. D. 1908,' and induced and procured the other members of said building committee to sign said indorsement, together with himself; that the said defendant concealed from said board of supervisors of said *Forest County* the fact that, although he induced said committee to indorse and accept the bid of said Thomas J. Bolger Company, as the best bid offered, that said bid was not the highest bid, and that, by accepting the said bid of the said Thomas J. Bolger Company, the said plaintiff was defrauded out of the said sum of three thousand three hundred twenty-five ($3,325) dollars; that the action of the said defendant in so controlling the said bonding committee and inducing said committee to accept the bid of said Thomas J. Bolger Company was wilful, fraudulent and corrupt, resulting in damage to the said plaintiff in the said sum of three thousand three hundred twenty-five ($3,325) dollars.

"Wherefore plaintiff demands judgment against the defendant for the said sum of three thousand three hundred twenty-five ($3,325) dollars, together with interest thereon from the 3d day of October, 1908, and for the costs and disbursements of this action."

The exhibits attached to the complaint are as follows:

"Exhibit 'A.'

"Crandon, Forest County, Wisconsin,
"October 3, 1908.
*"To the Bonding Committee for the County Board of Forest County, Wisconsin:*

"Gentlemen: For your $55,000 county court-house bonds, dated October 1, 1908, maturing $5,000 April 1, 1910, and

$5,000 maturing on April 1st in each year thereafter, until all are paid, said bonds to bear interest at the rate of six per centum per annum, payable annually, both principal and interest payable at Crandon State Bank of Crandon, Wisconsin, said bonds to be delivered at Chicago, Illinois, we will pay you par $55,000, and accrued interest, $5,000 to be paid on delivery of bonds, the remaining $50,000 to be paid on demand, 2 per cent. on daily balance to be allowed as may be required as the work of building said court house proceeds.

"As an only condition to this contract, your county board shall pass a resolution prescribing the form of bonds and interest coupons and manner of execution, and levy a direct annual tax upon all taxable property in the county, sufficient to pay the principal and interest when due (the forms for which we will furnish). You will also furnish us statements of amount of taxes levied for current year, to pay administrative expenses (section 1074, R. S. Wisconsin, as amended by ch. 430 of the Laws of 1907), also proof that the county clerk mailed notices of special meeting for September 23, 1908, to each member of your county board (section 664, R. S. Wisconsin Statutes of 1898); that proceedings of your county board at said special meeting of September 23, 1908, and resolution adopted thereat were published in conformity with the provisions of section 674 of the Wisconsin Supplement of 1906; that the resolution was adopted pursuant to the rules and by-laws of the county board, furnishing us with copy (certified) of all rules and by-laws relative to the calling and holding of meetings and manner of transacting business thereat, including introduction, reading, reference, passage and adoption of ordinances, resolutions, etc.

"THOMAS J. BOLGER COMPANY,
"153 La Salle Street,
"By W. H. H. Cash, Agent."

"EXHIBIT 'B.'

"*C. J. Himley, Secretary Bonding Committee, Forest County, Wis.:*

"DEAR SIR: For the $55,000 court-house bonds to be issued by your county, being bonds of the denomination of $1,000 each, dated Oct. 1, 1908, due $5,000 annually April 1, 1910 to 1920 inclusive, all other detail as per inclosed form of bond, we will pay you upon delivery of the bond to us in Chicago the sum of $58,325, and interest.

"We will also furnish blank bonds free.

"As evidence of our good faith we attach hereto certified check in the sum of $550, payable to the order of the county treasurer of *Forest County,* Wis., said check to be held by you and used as part payment for the bonds if awarded and delivered to us under the terms of the contract, otherwise to be returned to us.

"Respectfully submitted,

"HARRIS TRUST & SAVINGS BANK,

"By H. W. Chapman."

The defendant demurred to the complaint upon the grounds that there was a defect of parties, in that the other members of the bonding committee were not joined with the defendant as codefendants; that several causes of action were improperly united; that the complaint failed to state facts sufficient to constitute a cause of action; and that the action was not commenced within the time limited by law under sec. 4224, Stats. (1898).

The court overruled the demurrer, and the defendant appeals from the order overruling the demurrer.

*Samuel Shaw,* appellant, in person.

*A. C. Umbreit,* special counsel, and *John F. Hooper,* district attorney, for the respondent.

SIEBECKER, J.    The complaint discloses that the pleader sought to charge that the defendant, as a member of the committee to negotiate for the sale of the county's bonds, which had been issued by the county to enable it to secure the necessary financial means to construct a county court house, committed a wrong which caused the county pecuniary injury. The allegations of the complaint, though indefinite and general in essentials, permit of the conclusion that the pleader purposed to state causes of action for the wilful misconduct of the defendant pertaining to transactions of the bonding committee, and that the county's financial interests were thereby wilfully sacrificed in the amount alleged.    The de-

murrer challenges the sufficiency of the complaint, upon the
ground that the facts alleged do not constitute a cause of ac-
tion against the defendant. The contentions of the plaintiff
in support of the claim that the facts alleged state good causes
of action against the defendant are grounded on the idea that
the defendant was a member of the bonding committee by
acting with such committee, and, for this occasion, he was in
fact an officer of the county and liable as such. Counsel con-
ceded that the law providing for the appointment of commit-
tees by county boards confers authority to appoint on such
committees only members elect of the county board. That
such is the authority conferred by sec. 668, Stats. (Laws of
1907, ch. 14), is plain. The complaint alleges that the county
board by resolution appointed a committee of three, known
as the bonding committee, and authorized and empowered
such committee to negotiate, sell, and deliver the county bonds
for the county board to the highest and best bidder therefor;
that the county board appointed two of its members and the
defendant, who was not a member of such county board, mem-
bers of said committee; and that the defendant accepted the
appointment and acted with the two members of the board so
appointed. The question is: Does this show that he was a
county officer while he was acting for the board in carrying
out the objects of the resolution? To make him an officer of
the county it is necessary that he fill an office. It is claimed
that the creation of the committee by the county board was an
act within the authority conferred by sec. 668, Stats., and
that membership thereof constituted him an officer of the
county for the purposes of the authority delegated to them.
True, the persons who carried out this bond transaction acted
for the county board in a matter the board could delegate to a
committee of its members under sec. 652, Stats. (1898). See
*French v. Dunn Co.* 58 Wis. 402, 17 N. W. 1. A properly
constituted committee of members of the county board could
act only as an agency of the county board to execute and per-

form a duty of the board. This, however, can only be lawfully done by a committee composed of board members, and no power or authority existed to appoint the defendant a member of such a committee. The result is that no authority was conferred on the defendant as a member of such a committee; nor was he invested with any power to perform a function of the county board. Since he was not a member of the county board he was wholly outside the field of official action in this transaction. Under the existing law it is only by virtue of membership of the county board that members of a committee thereof can be considered as acting in an official capacity for the county in conducting its affairs. Under such circumstances, defendant's participation in the transaction of selling the bonds was that of a volunteer having no official authority. These conditions preclude the inference that a liability of the defendant can be predicated upon the grounds presented by the plaintiff's counsel, namely, that he was a *de facto* officer of the county. As we have seen, he held no office, because membership of such a committee refers back to membership in the county board.

The question then arises: Do the facts alleged constitute a cause of action against the defendant in his individual capacity? The facts alleged tend to show that the defendant undertook, without compensation, to aid the county board in negotiating the sale and delivery of the county bonds to the "highest and best bidder" therefor; that he acted in conjunction with two members of the board in this transaction for the sale and delivery of the bonds to the appropriate bidder, whose bid for the purchase of the bonds was presented pursuant to letters sent out by the defendant and the members of the board associated with him, inviting parties to submit bids to them for the purchase of the bonds; that he and the two members of the board accepted the bid by which it is alleged the county realized $3,325 less than the amount the county would have realized by accepting the other bid submitted to

them; and that the defendant controlled the other members of the alleged committee, fraudulently and corruptly induced them to report to the county board that the accepted bid was the best offer received by them for the purchase of the bonds, and he concealed from the members of the board the fact that it was not the best bid. It is alleged generally that the defendant acted collusively and fraudulently in the matter but that the details of such wrongful conduct are unknown to the plaintiff. "The averments of the pleader stigmatizing them as fraudulent adds nothing to the pleading, nor does it change the essential character of the acts and omissions." *Herbst v. Land & L. Co.* 134 Wis. 502, 115 N. W. 119, and cases cited. This court in the case of *Nelson v. C., M. & St. P. R. Co.* 60 Wis. 320, 19 N. W. 52, declared the rule to be:

"Whoever bargains to render services for another, undertakes for good faith and integrity, but he does not agree that he will commit no errors. For negligence, bad faith, or dishonesty he would be liable to his employer, but, if he is guilty of neither of these, the master or employer must submit to such incidental losses as may occur in the course of the employment, because these are incident to all avocations, and no one, by any implication of law, ever undertakes to protect another against them."

See, also, *Noble v. Libby,* 144 Wis. 632, 129 N. W. 791.

"A general charge that a party acted fraudulently, falsely, or wrongfully, or that he made fraudulent representations or statements, amounts to nothing; there must be a specification of facts to justify it. It is at most but a mere inferential statement, too vague and uncertain to apprise the opposite party of what is meant to be proved, in order to give him an opportunity to answer or traverse it, or to inform the court whose duty it is to declare the law arising upon the facts." *Kewaunee Co. v. Decker,* 30 Wis. 624.

See, also, *Pietsch v. Krause,* 112 Wis. 418, 88 N. W. 223; *New Bank v. Kleiner,* 112 Wis. 287, 87 N. W. 1090; *Riley v. Riley,* 34 Wis. 372.

Applying these rules to the allegations of the complaint, we find that there are no facts alleged to show fraud. The only fact which can be claimed to show that the defendant and his associates did not secure the best results for the county in selling the bonds is that the bid accepted apparently brought a return of $3,325 less than the other bid would have brought. But the complaint wholly fails to allege any of the conditions incident to the rejected bid, as shown by the exhibits attached to the complaint, which might show that the accepted bid was the better bid, though on its face the money return was apparently less than from the one rejected. Further, there is no fact alleged that impeaches the good faith and honesty of the defendant in believing the bid accepted to be a better bid for the county's interest than the rejected one. In law every intendment that harmonizes with honesty and fair dealing must be presumed in the light of the alleged facts. The action of the defendant and his associates may be fully explicable on the ground of an honest mistake in judgment, in so far as the alleged facts show, for which no liability for pecuniary loss under such circumstances attaches. We are persuaded that the complaint is wanting in facts showing that the defendant committed a fraud in the alleged transaction of the bond sale. Hence it states no cause of action against the defendant, and the demurrer should have been sustained.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to the court to sustain the demurrer to the complaint.