## HALL vs. THE STATE.

CONSTITUTIONAL LAW. *Geological commissioners under act of 1857, public officers; their contract with the state terminated by unconditional repeal of the act.*

1. Where a legislative act creates a public office, appoints the officer, and appropriates money to pay his salary, a subsequent repeal of the act terminates both the office and the right of the appointee to any salary not already earned at the time of such repeal.
2. The repeal of such an act does not impair the obligation of contracts within the meaning of subd. 1, sec. 10, art. I of the federal constitution.
3. The commissioners appointed by ch. 40 of 1857, to make a geological survey of the state, were public officers; and their offices were abolished by the subsequent unconditional repeal of the act, notwithstanding the contracts entered into with them by the governor in behalf of the state; and plaintiff cannot recover any salary for services alleged to have been rendered under the contract with him since such repeal.

The action was commenced in this court, to recover for alleged services of the plaintiff, as a commissioner of the geological survey of the state, from March, 1862, to March, 1863. The plaintiff was appointed such commissioner by ch. 40, Laws of 1857; and in March, 1858, the governor entered into a contract with him as prescribed in said act, to continue in force five years. The plaintiff received the salary fixed in the contract until March, 1862, at which time the act of 1857 was unconditionally repealed. The legislature refused to pay the claim. The foregoing facts are stated in the complaint.

The attorney general demurred to the complaint, on the grounds: 1. That it fails to state a cause of action; and, 2. That the statute of limitations has run against the plaintiff's demand.*

---

* Ch. 40, Laws of 1857, appoints "*James Hall*, of Albany, N. Y., and Ezra S. Carr and Edward Daniels, of Wisconsin, commissioners to make a geological, mineralogical and agricultural survey of the state" (sec. 1); provides that "said commissioners shall arrange and distribute the functions of such

Hall vs. The State.

*The Attorney General,* for the state:

1. Ch. 40, Laws of 1857, gives the governor no authority to contract *under seal;* nor does it fix the *time* for which the commissioners shall serve. The expression "extent of the service" refers to the territorial limits to be assigned to each, or perhaps to the amount of labor to be performed by each; certainly not to the period of time during which the services were to be performed. The act of an agent or an attorney under an express power must be within the letter or scope of the power, to bind the principal. Story on Agency, § 165, and cases there cited; *Hanford v. McNair,* 2 Wend., 286; *North River Bank v. Aymar,* 3 Hill, 262; *Orton v. The State,* 12 Wis., 509; *Randall v. The State,* 16 id., 340; *Gee v. Bolton,* 17 id., 604; *Mayor, etc., v. State Bank,* 3 Ark., 227; *Nixen v. Hyserott,* 5 Johns., 58. An authority granted by the legis-

survey by mutual agreement" (sec. 2); directs the governor of this state to "make a written contract with each of the commissioners, expressly stipulating and setting forth the nature and extent of the service to be rendered by each, and the compensation therefor, including the expenses of the department of the survey under charge of each commissioner," and that "such contract shall expressly provide that the compensation to such commissioner shall be at a certain rate per annum, to be agreed upon, and not exceeding the rate of $2,000 per annum, and that payment will be made only for such part of the year as such commissioner may be actually engaged in the discharge of his duty as such." It further provides that in case of a vacancy occurring in the commission, the governor shall appoint some suitable person to fill it, and that he may remove any member for incompetency or neglect of duty, after due notice, etc. (sec. 5); and "to carry out the provisions" of the act, it appropriates "$6,000 per annum for the term of six years."

The contract entered into with the plaintiff, as set forth in the complaint, purports to be made by "Alexander W. Randall, governor of the state of Wisconsin, on behalf of said state, of the one part," etc., and, besides the signature and seal of the plaintiff, has the following signature: "ALEXANDER W. RANDALL, Gov. of Wis., for State of Wis.," with his private seal attached. It recites that in pursuance of said act said commissioners have arranged and distributed the functions of said survey by mutual agreement; that said *Hall,* under such arrangement and distribution, thereby agrees and binds himself, as such commissioner, to do certain specified portions of the

lature to an agent to enter into a contract must be construed to mean a simple contract, and not a sealed one. *State v. Allis*, 18 Ark., 269. Ch. 334 of 1860 does not ratify the contract. 2. If the governor had authority to make this contract under seal, it is not well executed under his private seal, so as to bind the state. Constitution of Wis., art. XIII, sec. 4; Tay. Stats., 264, sec. 20, subd. 2. An action on the contract, however, might lie in *assumpsit*. *Rundall v. Van Vechten*, 19 Johns., 60; *Damon v. Granby*, 2 Pick., 345; *Mitchell v. St. Andrew Bay*, 4 Fla., 200; *F. & M. Turnpike Co. v. Mc-Cullough*, 25 Pa. St., 303; *State v. Allis, supra; Regents, etc., v. Detroit Y. M. Society*, 12 Mich., 138, 155; *Bank v. Guttschlick*, 14 Pet., 19; and especially *Baxter v. The State*, 15 Wis., 489. 3. The contract was terminated by a repeal of

---

work required by the act, and to devote his time and attention to the duties of his department; and that this contract is "to continue until the third day of March, 1863, unless the said *Hall* shall be removed for incompetency or neglect of duty, * * * or unless a vacancy shall occur in his office by his own act or default." It also contains an agreement on the part of the state to pay said *Hall* for his compensation and expenses at the rate of $2,000 per annum, with deduction *pro rata* for such time as he or his assistants shall not be engaged in the prosecution of his duties. Ch. 334, Laws of 1860, constituted and appointed the plaintiff "principal of the geological commission," established by ch. 40 of 1857, and vested in him "such general control and supervision of the geological survey of the state as is not already expressly reserved to the several commissioners designated in said chapter" (sec. 1); required him to enter into certain written contracts with J. D. Whitney and Charles Whittlesey, for the completion of certain surveys and maps (sec. 2); and for the purpose of carrying into effect the provisions of the second section, authorized the governor, upon presentation of the proper vouchers, to draw from the treasury such portion of the sum appropriated by said ch. 40 of 1857, as was not drawn previous to the signing of the contracts with the commissioners on the 29th of May, 1858, and provided that all that part of the said appropriation which should not be required to carry into effect the provisions of the contracts with Whitney and Whittlesey should be appropriated for the engraving of maps and drawings to illustrate their surveys (sec. 3).

By the terms of ch. 116, Laws of 1862, ch. 40 of 1857, and ch. 334 of 1860, were unconditionally repealed.

the act. The plaintiff was a public officer, appointed by the act. His employment and his tenure of office were created and fixed by the act itself. The contract merely fixed his compensation, that being the only power delegated to the governor. He was not authorized to contract for any specific time — certainly not for a time beyond the existence of the law. A person holding an office created by the legislature, has no vested right in it; but the legislature may at any time destroy it. *State v. Douglas*, 26 Wis., 428; *State v. Von Baumbach*, 12 Wis., 310; *Conner v. Mayor*, 5 N. Y., 285; *People v. Comptroller*, 20 Wend., 595.

*L. S. Dixon* and *D. S. Wegg*, for the plaintiff:

1. Where an office is created by statute, the legislature may change at pleasure the term, the mode of appointment and the compensation; and the officer may resign whenever he sees fit; because there is no contract between him and the government. The plaintiff is not a public officer within these principles, but an employee of the defendant. The act of 1857 makes it the governor's duty to enter into a written contract with the commisssioners, binding them to perform certain duties, and the state to pay them a certain sum, therein specified; and sec. 6 prescribes the time for which the contract should continue. If this contract had been made between private parties, each would clearly have an action for any breach thereof on the part of the other. The same rules apply to contracts between the state and an individual as to those between individuals only. *Sholes v. The State*, 2 Chand., 195, 197-8; *Metzel v. The State*, 16 Wis., 350; *McComb v. Board of Liquidation*, Chicago Legal News, April 24, 1875, and cases there cited. The repealing act of 1862 impairs the obligation of the contract, and is void. 2. The general rule is, that when a deed is executed or a contract made *on behalf of the state* by a public officer duly authorized, and this fact appears upon the face of the instrument, it is the deed or contract of the state, although the officer may be described therein

as one of the parties, and may have affixed only his individual name and seal. This rule is founded upon public policy. It would be impracticable to place the great seal of the United States upon all contracts entered into in its behalf in the various departments of public service. *Hodgson v. Dexter*, 1 Cranch, 109; *Unwin v. Wolseley*, 1 Term, 674; *State v. Mc-Caully*, 15 Cal., 429, 456; *Stinchfield v. Little*, 1 Greenl., 234; *Dawes v. Jackson*, 9 Mass., 490. Again, it is not essential that the common seal be used even in cases of private corporations; any other may be, if it appears that such use has been adopted or ratified, and very slight evidence has been held sufficient for this purpose. *Bank v. R. R. Co.*, 30 Vt., 159, 160, 172; *Tenney v. Lumber Co.*, 43 N. H., 343, 354-5; *Mill Dam v. Hovey*, 21 Pick., 417; *Porter v. R. R. Co.*, 37 Me., 349; *Phillips v. Coffee*, 17 Ill., 154. 3. The legislature directly recognizes the contract in question by sec. 3, ch. 334, Laws of 1860, and must be considered to have ratified it, and to have adopted the seal affixed to it. It would be unjust to construe this act otherwise, considering the unconscionable nature of the defense. Plaintiff is entitled to judgment under this view of the case, even if the court adheres to its decision in *Baxter v. The State*, 15 Wis., 489.

LYON, J. Several questions were ably argued at the bar, but the one which underlies all the others is: Did the repeal of the act of 1857 (ch. 40), providing for a geological and agricultural survey of the state, terminate the salaries of the commissioners thereby appointed? If the commissioners were public officers, there can be no doubt that the repeal of the act appointing them, and appropriating money to pay them, terminated both the office and the right to the salaries which pertained to the office. In such case the repeal of the act of 1857 does not impair the obligation of contracts within the meaning of the constitution of the United States, which ordains that no state shall pass any law impairing the obligation

of contracts. Art. I, sec. X, pl. 1. It was so held in the *Dartmouth College Case*, 4 Wheat., 627 to 630, and is the settled law.

It may as well be remarked here as elsewhere, that the fact that the law of 1857 provides for the making of a formal contract is not considered important or very significant. Every public officer who is required by law to execute, and who does execute, a bond conditioned generally or specifically for the faithful discharge of the duties of his office, is equally under contract and equally sustains a contract relation to the state; yet, unless prohibited by the constitution, there is no doubt of the power of the legislature to abolish the offices and terminate the salaries pertaining thereto. The object of requiring the commissioners to enter into a contract with the governor seems to have been to enable the latter to fix the specific salary to which each commissioner should be entitled, and to prescribe the specific service which should be rendered by each. Had the legislature fixed the salary and prescribed the service in the act itself, omitting entirely the contract clause, the case would have been the same in principle.

The question recurs, therefore, Were the commissioners public officers? When the law of 1857 was enacted, the state was comparatively new. It was known to contain immense agricultural and mineral resources, but the extent and value of these, in large portions of the state, were not accurately known. It was then (as it now is) the policy of the state to encourage settlement and the investment of capital therein. To this end it was essential that authentic information concerning the resources of the state should be collected and disseminated. The act of 1857 appointed commissioners (of which the plaintiff was one), to collect such information; and other legislation provided for the appointment or election of still other commissioners to disseminate abroad the information thus collected. Of course, allusion is here made to commissioners of immigration.

The geological survey commissioners were appointed directly by the legislature; no specific term of office was fixed (except by the governor, whose power to do so may well be doubted); provision was made by law for removing them for cause, and for filling vacancies; their salaries were paid out of the state treasury; and their functions were not of merely private, local or temporary concern, but related to the material and permanent interests of the whole state. The duty imposed upon them was an important public trust, to be exercised for the benefit of all the people of the state, and could only be discharged properly by gentlemen of high attainments in physical science.

With this brief statement of the objects of the law of 1857, and the nature of the duties imposed upon the commissioners, we are ready to consider the legal principles which must control the determination of the question under consideration.

It may safely be asserted that any person charged by law with the performance of public functions affecting the general interests of society, especially if he be elected thereto by the people, or appointed directly by the legislature, and who receives his compensation out of the public treasury, is a public officer, and as such can have no vested right in his office, unless secured by the constitution. There is a class of cases which give a more strict construction to the term *office*, as used in constitutional clauses providing by whom certain officers shall be appointed, and restricting eligibility to office. *United States ex rel. Noyes v. Hatch*, 1 Pinney, 182, and several Pennsylvania cases there cited, belong to that class.

But for obvious reasons we think that no such limited construction should be given to the term in the present case. The legislation of a state affecting its material interests, if wise, will be adjusted to and governed by the ever changing circumstances of the people. As new interests arise they will be properly cared for, and all interests will receive the fostering care of the legislature within the limits of legitimate

legislative action. To accomplish this it is essential that the legislature should be free to act as the exigencies of particular circumstances may require, untrammelled by vested rights under previous enactments. If it is in the power of one legislature to create offices involving contract relations, for long terms and with large salaries attached thereto, and to give the incumbents a vested right to the offices and salaries, subsequent legislatures might not be thus free to act as the public good should require. We believe that one legislature has no power thus to tie the hands of a subsequent legislature; and that to hold otherwise would be to introduce a new, unsound and most dangerous principle into the jurisprudence of our state; one which would almost necessarily result in great evil to the state.

It may be entirely proper to adopt the strict rule of construction in cases which concern eligibility or the right to make appointments to public office; but in a case like this, where the question concerns the power of the legislature to abolish the office and terminate the salary, we think the more liberal construction should prevail. It is not conceded, however, that, were the strict rules adopted, the result in this case would be different. We are strongly inclined to think it would not.

It may be difficult to draw the exact line between an *office* and a mere *service* or *employment;* but, as already observed, when public functions are conferred by law upon certain persons elected by the people or appointed by the legislature, if those functions concern the general interests of the state, and are not of a nature merely local or temporary, such persons are public officers, especially if they are paid a salary for their services out of the public treasury; but an officer may be authorized to contract with and employ other persons to render service in his department (as clerks, messengers, agents, and the like), who would not be public officers. I suppose there is no doubt that the regents of the university are officers, but

it was held in *Butler v. The Regents, etc.*, 32 Wis., 124, that a professor in the state university appointed by the regents, is not a public officer in any sense that excludes the existence of a contract relation between himself and the board that employs him. His relation to the board was likened to that of the teacher of any public school to the district by whom he is employed, which beyond all question is purely a contract relation. Many other illustrations will readily suggest themselves to the mind.

Without attempting to lay down any rule by which the line between an office and a mere employment can always be found, we think it must be held that the plaintiff was a public officer in such sense that he could have no vested right in his office, and hence that the office and the salary pertaining thereto were abolished by the repealing act of 1862. Having reached this conclusion, we are relieved from considering the other questions argued by the learned counsel.

It follows that the demurrer to the complaint must be sustained.

*By the Court.* — Demurrer sustained.