POSTAL SERVICE EMPLOYEES — SERVICE ON BOARD OF EDUCATION Those officers and employees of the United States Postal Service, other than those persons occupying the positions of member of the Board of Governors and Advisory Council appointed by the President, do not exercise any portion of the sovereign power of the United States, and accordingly, do not hold any office of trust or profit under the laws of the United States. Therefore, only those persons appointed by the President to positions on the Board of Governors and Advisory Council of the United States Postal Service are prohibited by Article II, Section 12 of the Oklahoma Constitution from being a member of a school board in Oklahoma. This opinion does not consider whether an officer or employee of the United States Postal Service is prohibited by federal law or regulation (i.e., the Hatch Political Authority Act) from being a member of a local school board. The Attorney General has considered your request for an opinion wherein you refer to the previous Attorney General opinions that certain members of the United States Postal Department are prohibited by the Oklahoma Constitution from being a member of a local school board, and, calling attention to the Postal Reorganization Act of 1971, ask the following question: "Is any member of the United States Postal Service expressly prohibited from being a member of a local school board in Oklahoma?" The Attorney General's office has previously issued opinions regarding the constitutional proscription of persons holding various positions with the United States Postal Department, from simultaneously serving on local school boards. However, the enactment of the Postal Reorganization Act, which became effective July 1, 1971, requires a reexamination of the basis for the conclusions of said opinions, and their present applicability. The said Act abolished the Post Office Department and created the Postal Service, the latter being established as an independent establishment of the executive branch of the United States Government. 39 U.S.C.A., Supp. 1975, 201. Said reorganization was accompanied by a change in the employment procedures in the Postal Service, which, in the previous Attorney General's opinions, was the factor determinative of constitutional ineligibility to hold an office of trust or profit under the laws of the State. The previous Attorney General opinions have considered whether persons holding various positions with the United States Postal Department and with the United States Postal Service hold such offices of trust or profit referred to in Article II, Section 12 of the Oklahoma Constitution, and are thereby precluded from simultaneously serving as members of local school boards. Article II, Section 12 of the Oklahoma Constitution provides as follows: "No member of Congress from this State, or person holding any office of trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State." This constitutional provision was construed by the Court in Wimberly v. Deacon,193 Okl. 561, 144 P.2d 447 (1944), wherein it stated: ". . . No doubt the purpose of such provision is to protect the public interest so that an officer holding an office of profit or trust under the state laws may give his undivided attention to the duties of his office without being hampered by an official allegiance to any other state or the United States." (p. 452) This follows the holding of the various courts regarding the purpose of similar provisions in the Constitutions of other states. In Martin v. Smith, 239 Wis. 314, 1 N.W.2d 163 (1941), the Court considered the purpose of such a provision of the Wisconsin Constitution, stating that it does not deal with incompatibility of offices which invokes the common law rule (63 Am. Jur.2d, Public Officers and Employees, 62, p. 668 1972), but that: "The apparent purpose was to prevent persons holding federal offices from holding at the same time any office of trust, profit or honor under the laws of this state. This was no doubt intended to protect the state in the exercise of its sovereign power." (p. 169) (Emphasis added.) Groves v. Barden, 169 N.C. 8,84 S.E. 1042 (1915), determined whether a rural mail carrier appointed by the Postmaster General came within the classification of officers within the meaning of a constitutional provision similar to the above-quoted provision of the Oklahoma Constitution. The court quoted with approval as follows: "`. . . . The manifest intent is to prevent double office-holding — that offices and places of public trust should not accumulate in a single person — and the super added words of "places of trust or profit" were put there to avoid evasions in giving too technical a meaning to the preceding words."' (p. 1042) A board of education being a public office (Barnhill v. Thompson, 122 N.C. 493, 29 S.E. 720, 721 1898; 78 C.J.S., Schools and School Districts, 106a), therefore, requires the determination of whether a position with the United States Postal Service is an office that comes within the purview of Article II, Section 12 of the Oklahoma Constitution. The question of whether a position was a public office, or an employment, or under contract was considered in Guthrie Daily Leader v. Cameron, 3 Okl. 677,41 P. 635, 636 (1895), wherein the following was quoted with approval: "'A public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised for the benefit of the public. The individual so invested is a public officer . . . The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive, or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer.' . . ." State v. Sowards, 64 Okl. Cr. 43, 82 P.2d 324 (1938), follows this reasoning in distinguishing an office from an employment. Such distinction is more clearly set out in Maddox v. State, 249 S.W.2d 972 (Ark. 1952), wherein it is stated: "Since the distinction between a public officer and a public employee tends to become indistinct when the position in dispute has some of the characteristics of each, we have never attempted to frame an inflexible definition of either. Yet the governing principles are well established. A public officer ordinarily exercises some part of the State's sovereign power. His tenure of office, his compensation, and his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive . . . On the other hand, mere public employment differs from a public office in that some or all of these characteristics are lacking." (pgs. 972-973) Groves v. Barden, supra, cites United States v. Hartwell, 73 U.S. (6 Wall.) 385, 18 L.Ed. 830, and United States v. Smith, 124 U.S. 525, 8 S.Ct. 595,31 L.Ed. 534, as illustrative of the application of the rule making the character of a position with the United States Government to depend upon the source of appointing power. United States v. Smith, supra, determined whether a clerk in the Office of the Collector of Customs, who had been appointed to his position by the Collector of Customs, with the approbation of the Secretary of the Treasury, was an officer of the United States, stating: ". . . An officer of the United States can only be appointed by the President, by and with the advice and consent of the Senate, or by a court of law, or the head of a department. A person in the service of the government, who does not derive his position from one of these sources, is not an officer of the United States, in the sense of the Constitution. . . ." Also, United States v. Mouat, 124 U.S. 303,8 S.Ct. 505, 31 L.Ed. 463 (1888), states: "What is necessary to constitute a person an officer of the United States, in any of the various branches of its service, has been very fully considered by this court in United States v. Germaine, 99 U.S. 508 25 L.Ed. 482. In that case it was distinctly pointed out that, under the Constitution of the United States, all its officers were appointed by the President, by and with the consent of the Senate, or by a court of law, or the head of a department; and the heads of the departments were defined in that opinion to be what are now called the members of the Cabinet. Unless a person in the service of the government, therefore, holds his place by virtue of an appointment by the President, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States." United States v. Germaine, 90 U.S. 508, 25 L.Ed. 482
(1879), United States v. Hartwell, supra, United States v. Smith, supra, and United States v. Mouat, supra, are generally cited in cases involving determination of whether individuals in the service of the United States Government are officers. The organization of the Postal Service, as established by the Postal Reorganization Act of 1971, is set out at Chapter 2 of Title 39 of the United States Code. Nine members of the Board of Governors and eleven members of the Advisory Council are appointed pursuant to the provisions of Chapter 2, and hold their respective positions by virtue of an appointment by the President. Accordingly, said parties are officers of the United States. The Board of Governors appoints the Postmaster General, and they jointly appoint the Deputy Postmaster General. A General Counsel, a Judicial Officer, and Assistant Postmaster General are appointed by the Postmaster General. The members of the Board of Governors and the Postmaster General are not members of the President's cabinet. Therefore, their respective and conjoint appointees are not officers of the United States, as strictly defined by case law. See United States v. Mouat, supra. Chapter 10 of Title 39 of the United States Code provides that, except as otherwise provided in that Title, the Postal Service shall appoint all officers and employees of the Postal Service. (39 U.S.C.A., 1001a). Section 1002 of said Title, inter alia, prohibits political recommendations with respect to appointment, promotion, assignment, transfer, or designation of an officer or employee in the Postal Service. Employees of the Postal Service appointed by the Service pursuant to these provisions are not appointed under authority of law by the head of a department, and, therefore, are not public officers, but are merely public employees. A case which considered the proscription of holding public offices under a constitutional provision similar to the above-quoted provision of the Oklahoma Constitution is Baker v. Hazen, 341 A.2d 707 (Ver. 1975). The court considered whether the Office of Postmaster, as established under the Postal Reorganization Act of 1971, was an office of profit or trust within the meaning of a constitutional prohibition against dual office holding, stating: ". . . Even though the legislation makes the Postal Service 'an independent executive agency', it is still 'created' by congressional enactment under the exclusive authority of that body to establish post offices. U.S. Const., art. I, section 8, clause 7. Furthermore, under 39 U.S.C.A., 208, Congress has reserved the entire power to alter, amend, or repeal any or all of the Postal Service law. "Similarly, the combination of the Postal Service Fund, the revolving fund in the Treasury, and the supplementing appropriations from Congress, leave uncertain whether the pay of a postmaster consists of an emolument provided from the Treasury of the United States. Typically, these conflicting inferences are resolved by reference to constitutional objectives. Authority cited "Unfortunately, the very age of the provision makes it obscure. If the purpose was to prevent divided loyalty because of emoluments received from both state and federal sources, in these days of expanded funding many, if not most, of our citizens could be found to be so benefitted, either directly or indirectly. If the same consideration is limited to those in the positions of office holders in the federal government, is the proscription inapplicable because it is under the executive branch, and is that affected by the fact that the enactment came from Congress? Or has the clause become limitation on federal patronage in the period since 1793? (p. 709) ". . . "With an uncertainty in the measure of the mischief sought to be prevented, and a strong dilution of the proscribed status of the old office of postmaster, the question takes on a different aspect. The constitutional provision represents a denial of a right to a citizen. If it cannot be clearly demonstrated that he falls within its proscription, or equally plainly shown that he is in violation of its purpose, he is entitled to be held free of its prohibition. . . ." (p. 710) The holding in the Baker case follows what appears to be a recent trend in the court decisions involving constitutional proscriptions on dual holding of public offices as such provisions apply to officers and employees of the reorganized United States Postal Service. A Kentucky case, cited as authority for several of the aforesaid opinions of this office on this question, was overruled by Lasher v. Commonwealth,418 S.W.2d 416 (Ky. 1967). Considering whether the position of rural mail carrier was an office of trust or profit under the United States, within the meaning of a state constitutional provision similar to the above-quoted Oklahoma provision, which would prohibit a rural mail carrier from serving as a member of a county board of education, the court said: ". . . Where a position involves authority, judgment, or discretion, obviously allegiance and loyalty are matters of prime concern. But where a position carries no power to make decisions, and its incumbent merely performs routine functions according to order of superiors, any possible danger from a separation of allegiance or a division of loyalty would not seem to be significant, and we cannot conceive that the framers of our Constitution deemed it significant enough to be brought within the prohibition of Section 237." (p. 418) Also, Commonwealth, ex. rel. Hancock v. Clark, 506 S.W.2d 503 (Ky. 1974), held that the postmaster of a fourth-class post office was not an officer within the meaning of the constitutional provision making a "member of Congress or person holding or exercising an office of trust or profit under the United States or any of them . . . ." ineligible to hold or exercise any office of trust or profit under the State Constitution or laws thereunder. The court stated: ". . . Whether a position is an office of trust or profit within the intended meaning of Const. 237 should be determined by what it really is. The position of a postmaster today differs in at least one significant respect from what it was when the earlier cases mentioned above were decided. High or low, in those days it was an office of pure political patronage. Today it is not, and the factors in the equation have been changed. Today too, of course, the federal establishment of civil service employees in general is a vastly greater segment of the local populace than would have been dreamed when this constitutional inhibition originated or even when it was carried into our present charter 83 years ago. Surely . . . it could not have been intended that all of these people would be ineligible to hold local office. "So where is the line to be drawn? Frankly, it has to be on a case-by-case basis, depending on the nature and importance of the office in question." (p. 504) Those employees of the United States Postal Service which are appointed by the Postal Service do not derive their respective positions by appointment by the President, by and with the advice and consent of the Senate, or by a court of law, or the head of a department as construed by United States v. Mouat, supra, and, accordingly, are not, strictly speaking, officers of the United States. Such employees do not occupy positions which carry the power to make decisions which could be construed as exercising any portion of the sovereign functions of the United States, but perform routine functions according to the order of superiors. Employees occupying such positions do not, strictly speaking, hold offices of trust or profit where allegiance and loyalty are matters of prime concern. Said employees do not, therefore, hold such offices with the United States Postal Service that Article II, Section 12
of the Oklahoma Constitution would prohibit them from simultaneously serving on local school boards within the State. However, this opinion does not consider whether an officer or employee of the United States Postal Service is prohibited by federal law or regulation (i.e., the Hatch Political Authority Act) from being a member of a local school board. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Those officers and employees of the United States Postal Service, other than those persons occupying the positions of member of the Board of Governors and Advisory Council appointed by the President, do not exercise any portion of the sovereign power of the United States, and accordingly, do not hold any office of trust or profit under the laws of the United States. Therefore, only those persons appointed by the President to positions on the Board of Governors and Advisory Council of the United States Postal Service are prohibited by Article II, Section 12 of the Oklahoma Constitution from being a member of a school board in Oklahoma. This opinion does not consider whether an officer or employee of the United States Postal Service is prohibited by federal law or regulation (i.e., the Hatch Political Authority Act) from being a member of a local school board. (HAROLD B. McMILLAN, JR.) (ksg)