DOUGLAS LA FOLLETTE, Secretary of State
You request my opinion whether those provisions of section137.01 (1) and (2), Stats., which require Wisconsin residency as a condition of being a notary public, violate article IV, section 2, clause I of the United States Constitution, commonly known as the Privileges and Immunities Clause.
For the reasons hereinafter stated, it is my opinion that they do not.
Section 137.01 is a duly enacted statute which is entitled to a strong presumption of constitutionality. A heavy burden is placed on a party making a constitutional challenge and, if any reasonable doubt exists, it must be resolved in favor of the constitutionality of the statute. In the Matter of Guardianshipof Nelson, 98 Wis.2d 261, 296 N.W.2d 736 (1980).
Section 137.01 (1) is applicable to notaries public who are not attorneys and subsection (a) provides that "[t]he governor shall appoint notaries public who shall be Wisconsin residents and at least 18 years of age." Subsection (2) provides that "[a]nyWisconsin resident who is licensed to practice law in this state is entitled to a permanent commission as a notary public upon application to the secretary of state and payment of a $15 fee."
The application presently before you is from an attorney who was admitted to practice law in Wisconsin on February 22, 1985 but is a California resident who maintains his principal office in Santa Monica, California. He claims that a permanent commission as notary public "would be an indispensable part of practicing law in Wisconsin." *Page 222 
Our supreme court has noted that the contours of the Privileges and Immunities Clause are not well developed. Taylor v. Conta,106 Wis.2d 321, 330, 316 N.W.2d 814 (1982). In Taylor, our court used a three-step inquiry to determine whether the challenged statute was constitutional under the clause. The court must find that a fundamental right or privilege is involved. To justify different treatment with respect to a privilege, the state must prove there is a substantial reason for discrimination and the means employed must bear a substantial relationship to legitimate state objectives. The court held that in matters of taxation, because nonresidents may present special problems for administration of state laws, the state need not grant nonresidents precisely the same rights it grants to residents. The court held that Wisconsin need not grant a nonresident deduction with respect to moving expenses incurred in connection with production of income outside Wisconsin and may tax the gain on the sale of a principal Wisconsin residence if the new residence is purchased outside the state even though tax on the gain would be deferred if the new principal residence were located in Wisconsin. In Supreme Court of N.H. v. Piper,105 S.Ct. 1272 (1985), the United States Supreme Court applied a similar three-step analysis in determining that New Hampshire's exclusion of nonresidents from the bar violated the Privileges and Immunities Clause. The Court first found that the practice of law was a protected "privilege" under article IV, section 2 of the United States Constitution, and then concluded that there was no substantial reason for the difference in treatment between residents and nonresidents and that the discrimination practiced against the nonresidents did not bear a substantial relationship to any legitimate state objective. Piper lived in Vermont, just across the Connecticut River, which divides her state from New Hampshire. The Court ruled 8-1 in favor of Piper. Justice Byron White wrote a separate concurring opinion saying that the residency requirement was invalid only as it applied to Piper because she lives so close to the state line. In Piper, the state argued that the Privileges and Immunities Clause should not be applicable to the practice of law because attorneys' activities are crucial to the administration of justice and inextricably bound up with the exercise of judicial power. Relying on In ReGriffiths, 413 U.S. 717 (1973), the Court held that attorneys do not really exercise actual governmental power. In Griffiths, the Court specifically said that although it did not wish to denigrate in any way the great responsibility that the power to administer *Page 223 
oaths entails, it hardly involved matters of state policy or "acts of such unique responsibility as to entrust them only to citizens." Griffiths, 413 U.S. at 724.
One of the privileges guaranteed nonresidents by the Privileges and Immunities Clause is the privilege of engaging in certain businesses in a state on terms of substantial equality with the residents of that state. Toomer v. Witsell, 334 U.S. 385, 396
(1948). It can be argued that being a notary public is advantageous to the practice of law, and that a member of the Wisconsin Bar, who is a resident of Minnesota but practices in Wisconsin, might be at a disadvantage if he or she is not allowed to be a notary public.
Any such disadvantage would be de minimis as there are thousands of notaries public and other officials in Wisconsin who are empowered to take oaths, attestations and certify depositions who would be available to any non-resident attorney on a statutory fee basis. The facts here are distinguishable fromPiper. There the Court found that the practice of law should be considered a "fundamental right" and that "[o]ut-of-state lawyers may — and often do — represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights." Piper, 105 S.Ct. at 1277. We do not believe the same importance can be attached to any need to import a non-resident notary public into Wisconsin. Piper is also distinguishable because no public office was involved. An attorney is an officer of the court for some purposes, but is not a public officer. It is my opinion that the acts which a notary can perform do not constitute the practice of law. One doesn't have to be a notary public to be an attorney or to engage in the law business and one doesn't have to be in the practice of law or be an attorney to be a notary public. Further, being a notary public is not usually considered a business or occupation in and of itself.
In my opinion, a nonresident does not have a fundamental right to engage in the activities delegated by the Legislature to notaries public. Section 137.01 (5), (6), (6m) and, 7) provides:
 (5) Powers. Notaries public have power to act throughout the state. Notaries public have power to demand acceptance of foreign and inland bills of exchange and payment thereof, and payment of promissory notes, and may protest the same for nonacceptance or nonpayment may administer oaths, take depositions *Page 224 
and acknowledgments of deeds, and perform such other duties as by the law of nations, or according to commercial usage, may be exercised and performed by notaries public.
 (6) Authentication. (a) The secretary of state may certify to the official qualifications of any notary public and to the genuineness of his signature and seal or rubber stamp.
 (b) Whenever any notary public has filed in the office of the clerk of circuit court of his county of residence his signature, an impression of his official seal or imprint of his official rubber stamp and a certificate of the secretary of state, such clerk may certify to the official qualifications of such notary public and the genuineness of his signature and seal or rubber stamp.
 (c) Any certificate specified under this subsection shall be presumptive evidence of the facts therein stated.
 (6m) Change of Residence. A notary public shall not vacate his office by reason of his change of residence within the state. Written notice of any change of address shall be given to the secretary of state within 5 days of such change.
 (7) Official Records To Be Filed. When any notary public ceases to hold office he, or in case of his death his executor or administrator, shall deposit his official records and papers in the office of the clerk of the circuit court of the county of his residence. If any such notary or any executor or administrator, after such records and papers come to his hands, neglects for 3 months to deposit them he shall forfeit not less than $50 nor more than $500. If any person knowingly destroys, defaces or conceals any records or papers of any notary public he shall forfeit not less than $50 nor more than $500, and shall be liable to the party injured for all damages thereby sustained. The clerks of the circuit courts shall receive and safely keep all such papers and records in their office.
Section 17.03 provides:
 Any public office is deemed vacant upon the happening of any of the following events, except as otherwise provided:
. . . .
 (4) His or her ceasing to be an inhabitant of this state . . . . *Page 225 
Even if we assume that the activities which a notary public engages in do constitute a privilege within the Privileges and Immunities Clause, Wisconsin can limit appointments to persons who have bona fide residence within the state, because there is substantial reason for the difference in treatment between residents and nonresidents and any discrimination bears a substantial relationship to a legitimate state objective.
Wisconsin places great importance upon the right of any member of the public to inspect and copy public records. Secs. 19.31-19.37, Stats. A notary public, as a public officer, is the legal custodian of the records in his or her office. Although notaries public do not necessarily have a large number of retained records which would be subject to inspection and copying, there would be some. Section 137.01 (7) requires that when a notary public ceases to hold office, he shall "deposit his official records and papers in the office of the clerk of the circuit court of the county of his residence." In order for a member of the public to have a meaningful right to inspect and copy public records in the hands of a notary public, such offices must have some place within the state where such records are maintained. Sec. 19.34, Stats. There is no indication that the applicant who has a California residence would maintain an office in Wisconsin. His office in California is not just across the river in an adjacent state as in Piper, but across many rivers and five states.
As early as 1881, our supreme court held that a notary public was an officer of the state and, under the then laws, "[i]t was necessary for him to reside in some county in the state in order to qualify him to hold the office. Having such residence, and thus being qualified, he had power to act in any county in the state." Maxwell v. Hartman and another, imp., 50 Wis. 660, 665,8 N.W. 103 (1881).
A notary public is a statutory state officer appointed pursuant to statute as the Legislature may prescribe rather than an officer of the court such as an attorney. Wis. Const. art. XIII, § 9. In 63 Op. Att'y Gen. 74 (1974), it was stated that the position of notary public is an office of trust, profit or honor in this state subject to article XIII, section 3 of the Wisconsin Constitution.
In State ex rel. Wisconsin Dev. Authority v. Damman,228 Wis. 147, 163, 277 N.W. 278 (1938), it was held that a person not an *Page 226 
elector of this state is ineligible to hold public office therein, although the constitution and statutes do not expressly so ordain.
In Martin v. Smith, 239 Wis. 314, 332, 333, 1 N.W.2d 163
(1941), the court was concerned with eligibility of a federal officer to hold a state office under article XIII, section 3 of the Wisconsin Constitution. The court held that the president of the university was not a public officer and noted, 239 Wis. at 333: "It may seem anomalous to some that the president of a great university should not be a public officer while a justice of the peace or a notary public is a public officer." The court stated,239 Wis. at 332: "It is certain that a person employed cannot be a public officer, however chosen, unless there is devolved upon him by law the exercise of some portion of the sovereign power of the state." The court included notaries public within those public officers who do exercise some part of the sovereign power of the state.
Section 137.01 (5) specifically restricts a Wisconsin notary public to notarial acts within the state.
I am aware that in Bernal v. Fainter, 104 S.Ct. 2312 (1984), the Court held that a statutory requirement in Texas, that a notary public be a citizen of the United States, was unconstitutional. Under Texas law, notaries authenticate written instruments, administer oaths and take out-of-court depositions. The court stated:
 [It] has never deemed the source of a position — whether it derives from a State's statute or its Constitution — as the dispositive factor in determining whether a State may entrust the position only to citizens. Rather, this Court has always looked to the actual function of the position as the dispositive factor. The focus of our inquiry has been whether a position was such that the officeholder would necessarily exercise broad discretionary power over the formulation or execution of public policies importantly affecting the citizen population — power of the sort that a self-governing community could properly entrust only to full-fledged members of that community.
Bernal, 104 S.Ct. at 2318. The Court held that a notary's duties, "important as they are, hardly implicate responsibilities that go to the heart of representative government. Rather, these duties are essentially clerical and ministerial." Bernal, 104 S.Ct. at 2319. The Court referred to In re Griffiths and noted that "[i]f it is improper to apply the political function exception to a citizenship requirement *Page 227 
governing eligibility for membership in a State bar, it would be anomalous to apply the exception to the citizenship requirement that governs eligibility to become a Texas notary." Bernal,104 S. Ct. at 2320.
Bernal is distinguishable on a number of grounds. The Court was not concerned with the Privileges and Immunities Clause, but with the Equal Protection Clause contained in the fourteenth amendment to the United States Constitution. The case was concerned with citizenship and not residency. The applicant, a native of Mexico,was a resident of Texas and proposed to utilize authority to act as a notary in his work in Texas. The Texas statute provided that a notary public must be a citizen of the United States. Bernal,104 S.Ct. at 2316, cites In re Griffiths, but that case involved the right of a resident alien to become licensed to practice law, not to hold public office. Even in Griffiths, there was residency in the state in which the person intended to become licensed and pursue her profession. Performance of the acts a notary public is authorized to engage in do not constitute a "fundamental right" to which the Privileges and Immunities Clause extends.
Wisconsin has a long history of treating a notary public as holding an important public office. Such officer exercises a portion of the sovereign power of the state. Notaries public have, in some cases, been viewed as political officers. Such officers are required to preserve their records and make such records available for inspection and copying during office hours and to have their records filed with the clerk of court of their county of residence in case of resignation or death. In my opinion, the provisions of section 137.01 (1) and (2), which require Wisconsin residency as a condition of being appointed a notary public, do not violate the Privileges and Immunities Clause. The statutory provisions are presumed valid and you should require compliance with their terms unless and until they are held invalid by a court of competent jurisdiction in a proper case.
BCL:RJV