## The State ex. rel. Bond v. French.

1. STATUTE — CONSTITUTION.—The act of August 21, 1848, providing for the holding of general and special elections, is to be construed not only by the words of the enactment, but by the objects in view and in accordance with the constitution.
2. SAME.—The constitution having provided that general elections should be held on, etc., in each year, but failing to specify what officers should then be elected, it was competent for the legislature to provide how judges of probate might be chosen at such elections.
3. CONSTITUTION —JUDGE OF PROBATE.— A judge of probate, is not a judge within the meaning of the constitution prohibiting the election of judges within thirty days of a general election, and may therefore lawfully be elected at a general election.

(1 <em>Chand.</em> 130.)

MANDAMUS.    This was a proceeding by *mandamus* by the relator to test the validity of his election as judge of probate of the county of Racine.

The relator received the greatest number of votes at the general election in 1848, for that office, and the respondent was the incumbent of the office at the time of the election of the relator ; and at the time at which the relator would have been entitled to assume the office, if duly elected, the respondent refused to deliver to the relator the books and papers, etc., pertaining to the office.

Two questions were involved in this case.    First, whether the election of that officer was provided for by the act of the legislature of August 1st, 1848 ; and, second, whether a judge of probate could be elected at or within thirty days of a general election.

The facts were presented by a stipulation between the litigant parties.

*Jas. S. Brown*, Attorney-General, and *Bond*, for relator.
*A. G. Chatfield*, for respondent.

STOW, C. J.    The relator received a majority of votes for judge of probate of Racine county, at the late general election,

and has since taken the official oath. The respondent was the judge of probate of the county at the adoption of the constitution, and still claims to be so, and refuses to deliver the books and muniments of the office. To compel this delivery a *mandamus* is now applied for. No objection is made to the form of proceeding, and it is understood that both parties are desirous of having the whole matter disposed of on this application.

Two questions are presented in this case: 1. Was the election of judges of probate at the late general election, in November, provided for by the act of August 21, 1848? 2. Can a judge of probate be elected at or within thirty days of a general election?

These are questions of the gravest character. They involve the construction of a law under which a large proportion of the administrative officers of the state are now acting, and the constitutionality of an election in which all our citizens participated.

The construction of the act to provide for the holding of general and special elections, approved August 21, 1848, must be determined like other statutes, not only by its own words, but by a reference to the proposed object of the legislature in passing it, and the subject of legislation, and, in this case, by reference to the constitution. The seventh section of the constitutional schedule provides, that " all county, precinct and town officers shall hold their respective offices until the legislature shall, in conformity with the provisions of the constitution, provide for the holding of elections to fill such offices." The first section of the thirteenth article of the constitution provides, " that general elections shall be holden on the Tuesday succeeding the first Monday of November in each year." This provision, of itself, was ineffectual, inasmuch as it did not designate *what* officers were to be elected at the general election; and it required, therefore, legislative action to make it operative. And the question now is, whether the

provisions of the act under consideration are sufficient for
this purpose.  We think they are.  The first section of title
2, article 1, of the act, declares " that general elections are
such as are held at the same time in all the counties of the
state, for the election of all or a part of the following officers :
governor, lieutenant-governor, senators, members of assem-
bly, clerks of the circuit courts, sheriffs, registers of deeds,
district attorneys, state superintendent, *judges of probate*,
clerks of the board of supervisors, coroners, secretary of
state, treasurer, attorney-general, representatives in con-
gress and electors of president, and all other state and county
officers not herein enumerated or otherwise provided for, and
shall be held on the Tuesday succeeding the first Monday of
November in each year."   Now, what is this but re-enacting
that part of the constitution which regulates the holding of
general elections, and specifying what officers, in addition to
those named in the constitution, shall be elected at the gen-
eral election ?  The constitution had fixed the time of holding
these elections, and provided that the governor and state
officers should be elected at them, but left to the legislature
to determine what other officers should be also then elected :
and this it has very clearly done by the section recited, unless
the awkward insertion of the words " or a part " renders the
whole section so uncertain and indefinite as to make it abso-
lutely unintelligible, and therefore void.  We cannot concede
to these words this destructive potency.  They are to be
regarded as merely providing that such part of the enume-
rated officers as hold by an annual tenure should be elected at
each general election, and that those of a longer tenure should
be elected at such general elections as vacancies occurred ; thus
saving the legislature from the apparent folly of attempting
to provide for the annual election of governor, members of
congress and others, as to the duration of whose offices it
had no authority.  We think this the obvious meaning of
the act, and the proper construction of it according to well-

established rules of construing statutes. But, did the matter admit of a doubt in the first instance, that doubt should be regarded as removed by the action which has been had under this act. While this court will never allow its judgments to be influenced by popular opinion, the united understanding and action of the whole state in a matter of great public interest is a guide that any tribunal may safely follow. It was by virtue of the law now under consideration that our late general election was held. In that election all our citizens participated, voting for their favorite candidates for judges of probate, sheriffs, coroners and other officers, the right to elect whom depended on the same statute, and whose election was obnoxious to the same objections; and yet it is believed that, of our forty thousand electors, not one refrained from voting for these officers on account of a belief or a suspicion that their election was not authorized. Our presidential electors were chosen by virtue of this same provision, and yet, has it occurred to any one that their votes ought to be rejected by congress, and the state disfranchised, because they were not legally elected ? We apprehend not.

The other question, and perhaps the most important one, is, can a judge of probate be elected at or within thirty days of a general election ?

In deciding this question, our only guide.is the constitution, in construing which we are to be governed by the same general rules of interpretation which prevail in relation to statutes. Now, who, in this connection, are meant as judges ? Clearly, those high judicial officers already mentioned, and whose election had been previously provided for in the same article; those officers known in legal, as well as common parlance, as judges; and judges of probate, we conceive, are not of this number. It was argued, however, on the part of the respondent, that the words " a judge or judges " are broad enough to include judges of probate, and that, there being no express exception of them, we are bound to apply the designation

" judge " to them, because the constitution uses this word as a part of their official title.   If this be so, it necessarily follows that all officers who are, for any purpose, made judges by the constitution, are judges within the provision under consideration ; a construction which would prohibit the election of senators and assemblymen (who are *judges* of the election of their own members) at a general election — a proposition that no one would probably venture to advance. Again, by a similar process of reasoning, it might be contended that the judges of the supreme court, which, after five years, the legislature is authorized to establish, might be elected at a general election, because, in the constitution, they are not called judges, but a chief justice and associate justices. And yet it is presumed that no person can entertain such an idea.

We are therefore of opinion that the relator was duly elected judge of probate of Racine county, and that he is entitled to the office.   A peremptory *mandamus* is awarded accordingly.