R. ROTH JUDD, Executive Director Ethics Board
You have asked several questions concerning the meaning of article XIII, section 11 of the Wisconsin Constitution. The Department of Administration has joined in your request for an interpretation and raises several other questions. All of the questions concern the meaning and general applicability of article XIII, section 11 of the Wisconsin Constitution. Rather than attempt to answer each individual question, therefore, I will discuss the constitutional provision generally. I believe the discussion answers all of the specific questions.
Article XIII, section 11 of the Wisconsin Constitution provides:
 Passes, franks and privileges. SECTION 11. [As created Nov. 1902 and amended Nov. 1936] No person, association, copartnership, or corporation, shall promise, offer or give, for any purpose, to any political committee, or any member or employe thereof, to any candidate for, or incumbent of any office or position under the constitution or laws, or under any ordinance of any town or municipality, of this state, or to any person at the request or for the advantage of all or any of them, any free pass or frank, or any privilege withheld from any person, for the traveling accommodation or transportation of any person or property, or the transmission of any message or communication.
 No political committee, and no member or employe thereof, no candidate for and no incumbent of any office or position under the constitution or laws, or under any ordinance of any town or municipality of this state, shall ask for, or accept, from any person, association, copartnership, or corporation, or use, in any manner, or for any purpose, any free pass or frank, or any privilege withheld from any person, for the traveling accommodation or transportation of any person or property, or the transmission of any message or communication.
 Any violation of any of the above provisions shall be bribery and punished as provided by law, and if any officer or any *Page 238 
member of the legislature be guilty thereof, his office shall become vacant.
 No person within the purview of this act shall be privileged from testifying in relation to anything therein prohibited; and no person having so testified shall be liable to any prosecution or punishment for any offense concerning which he was required to give his testimony or produce any documentary evidence.
 Notaries public and regular employes of a railroad or other public utilities who are candidates for or hold public offices for which the annual compensation is not more than three hundred dollars to whom no passes or privileges are extended beyond those which are extended to other regular employes of such corporations are excepted from the provisions of this section. [1899 J.R. 8, 1901 J.R. 9, 1091 c. 437, vote Nov. 1902; 1933 J.R. 63, 1935 J.R. 98, vote Nov. 1936]
Section 946.11(1), Stats., parallels the constitutional prohibition and makes violation of the prohibitions a Class E felony.
The rules governing the interpretation of statutes are used when construing the constitution. The State ex rel. Bond v.French, 2 Pin. 181 (1 Chand. 130) (1849).
 The purpose of construction of a constitutional amendment is to give effect to the intent of the framers and of the people who adopted it; "and it is a rule of construction applicable to all constitutions that they are to be construed so as to promote the objects for which they were framed and adopted." [Citation omitted.] "But the intent is to be ascertained, not alone by considering the words of any part of the instrument, but by ascertaining the general purpose of the whole, in view of the evil which existed calling forth the framing and adopting of such instrument, and the remedy sought to be applied; and when the intent of the whole is ascertained, no part is to be construed so that the general purpose shall be thwarted, but the whole is to be made to conform to reason and good discretion." [Citation omitted.]
State ex rel. Ekern v. Zimmerman, 187 Wis. 180, 184, 204 N.W. 803
(1925), as quoted in Kayden Industries, Inc. v. Murphy, 34 Wis.2d 718,729-30, 150 N.W.2d 447 (1967). *Page 239 
Our supreme court has summarized the analysis which should be employed in interpreting provisions of the constitution. The court examines first the plain meaning of the words in the context used; second, the historical analysis of the constitutional debates and of what practices were in existence; and third, the earliest interpretation of the section by the Legislature as manifested in the first law passed following the adoption of the constitutional provision. State v. Beno, 116 Wis.2d 122,136-37, 341 N.W.2d 668 (1984).
Article XIII, section 11 of the Wisconsin Constitution was created in November 1902. The last paragraph was added in 1936. Our supreme court has not interpreted article XIII, section 11 of the Wisconsin Constitution except in Dane County v. McManus,55 Wis.2d 413, 198 N.W.2d 667 (1972). That case involved a challenge to a labor agreement and county ordinance which reserved an area in the county parking ramp for county employes. Among other defenses to the parking ticket, the defendant argued that article XIII, section 11 of the Wisconsin Constitution prohibited the county board from reserving parking spaces for county employes. The court noted that the purpose of article XIII, section 11 of the Wisconsin Constitution was to prevent corruption of public officials and was created to prevent the railroads and their employes from corrupting and influencing government officers and employes.
The court concluded: "The language of the section itself makes it clear that `traveling accommodations or transportation of any person or property' pertains to privately owned public carriers and does not include municipally owned parking ramps." McManus,55 Wis.2d at 421. The court determined what was well within and absolutely beyond the section's ambit. It was not necessary for the court to define the section's exact boundaries. Therefore, although the McManus case may be instructive it is not determinative of the section's meaning. That meaning must be discerned from the section's language and history.
The first part of article XIII, section 11 of the Wisconsin Constitution applies to any "person, association, copartnership, or corporation." That clear language does not limit the section's application to railroads, public utilities or privately owned public utilities. The words and their meaning are unambiguous and expansive. If the words did leave any doubt concerning the intent of the section, the history of the section supports an expansive reading. *Page 240 
Before our constitution can be amended, the amendment must be passed by two sessions of the Legislature and approved by a majority of the voters at a general election. Article XIII, section 11 of the Wisconsin Constitution was initiated as Joint Resolution 8 in 1899. In that same year, Wisconsin passed its first law prohibiting public officers from accepting free passes. That law, chapter 357, Laws of 1899, was for our purposes identical to article XIII, section 11 of the Wisconsin Constitution. Although newspaper articles written at the time sometimes referred to the law as the "railroad pass" law, that title was descriptive of the evil sought to be cured, not the scope of the prohibition. In 1899 railroads were providing state and federal officeholders with free passes and as one newspaper noted, "[t]he men who hold the free books are usually voted as the companies desire." Minneapolis Journal, Jan. 31, 1905. Seegenerally Address by Howard F. Ohm, Chief of Wisconsin Legislative Reference Library to Candidates' Dinner, October 26, 1936: "The Pending Free Pass Amendment to the Constitution." But the clear language of both the statute and the constitutional provision includes more than railroads. When the Legislature wanted to prohibit free passes or discrimination in rates by railroads alone, it did so in unequivocal language. Chapter 362, section 8, Laws of 1905: "This act shall not be construed as preventing railroads from giving free transportation or reduced rates therefor to any minister of the gospel . . . ."
Perhaps the best evidence of the broad sweep of the Wisconsin language is the 1936 amendment which exempted certain "notaries public and regular employees of a railroad or other public utilities" from the section's prohibitions. We must construe the constitutional provision and its amendment as a whole. State exrel. Martin v. Zimmerman, 233 Wis. 442, 289 N.W. 662 (1940). The clear language of the prohibition applies to any person, association, copartnership or corporation, but the exemption applies only to railroads or other public utilities. If the original prohibitory language of the section included only railroads and public utilities, there would have been no need to use those terms in the 1936 amendment. If the section's prohibitions applied only to railroads and public utilities in the first instance, there would have been no need to specify those entities in the amendment. I am convinced, therefore, that the clear language of the constitution reflects the unmistakable intent. The section applies to any person, association, co *Page 241 
partnership or corporation; it is not limited to railroads or public utilities.
The words "promise," "offer" and "give" must also be given their ordinary meaning. Similarly, the phrase "at the request or for the advantage of" simply means that the prohibition cannot be avoided by, e.g., an officeholder asking a corporation to give a free pass to a friend for the officeholder's use or the corporation giving that pass knowing that it would be for the officeholder's use. Questions may arise whether specific acts fall within the accepted definitions of these words and phrases but that does not make the words and phrases ambiguous. Those are questions of application, not definition. The terms themselves are readily understood.
The prohibition extends to any "incumbent of any office or position under the constitution or laws, or under any ordinance of any town or municipality of this state." Wis. Const. art. XIII, § 11. An office is where, for the time being, a portion of the sovereignty, legislative, executive or judicial, attaches, to be exercised for the public benefit. United States, ex rel.Boyd v. Lockwood, 1 Pin. 359, 363 (1843). Our supreme court drew a distinction between employment and an office in Martin v.Smith, 239 Wis. 314, 333, 1 N.W.2d 163 (1941). In that case the court was asked to decide whether the president of the University of Wisconsin held a state office. The court held that he did not because the president was subject to the control of the Board of Regents, and that board, not the president, exercised the discretionary authority of the sovereign. The court concluded that the president "is an employee, not a public officer; he holds a position not an office of trust, profit, or honor under the state." Martin, 239 Wis. at 333.
The terms "office" and "position" therefore include all officers and employes under the constitution or laws of the State of Wisconsin. The definition in section 16.002(3), although added well after the constitutional amendment, provides a good definition of position as "a group of duties and responsibilities in either the classified or the unclassified divisions of the civil service, which require the services of an employe on a part-time or full-time basis." Therefore, someone working for the state either full-time or part-time as an officer or an employe is subject to the restrictions of article XIII, section 11 of the Wisconsin Constitution. *Page 242 
Having determined who cannot give and who cannot receive, we must now determine what may not be offered or accepted, that is, what is meant by "free pass or frank, or any privilege withheld from any person." Within two years of the adoption of article XIII, section 11 of the Wisconsin Constitution, one of my early predecessors was asked whether a state officer could accept and use a pass from a railroad corporation while he was acting as an attorney for that corporation. 1904 Op. Att'y Gen. 412. That opinion concluded, based on New York precedent, that this was not a free pass because a state employe earned the pass as part of his compensation from the railroad. That opinion was interpreting not only article XIII, section 11 of the Wisconsin Constitution, but also the predecessor to section 946.11. In its next session the Legislature defined "free pass" as including "any form of ticket or mileage entitling the holder to travel over any part of the line or lines of any railroad issued to the holder as a gift or in consideration or partial consideration of any service performed or to be performed by such holder except where such ticket or mileage is used by such holder in the performance of his duties as an employee of the railroad issuing the same." Sanborn Sanborn, Wisconsin Statutes Supplement ch. 185, sec. 4556a, ann. at 1343-44 (1899-1906).
The decision to define "free pass" is important for two reasons. First, such immediate reaction to the attorney general's opinion evidences a strong legislative policy that passes given as compensation for services should be prohibited. Second, this is the earliest interpretation of this section of the constitution by the Legislature, in this case coming only three years after the section's adoption. As such, it is the best evidence of what was understood by the phrase "free pass." Busev. Smith, 74 Wis.2d 550, 568, 247 N.W.2d 141 (1976); Payne v.Racine, 217 Wis. 550, 259 N.W. 437 (1935). Because the constitution's prohibition is not limited to railroads, however, the statutory definition of free pass must be modified when applied to the constitution. Under article XIII, section 11 of the Wisconsin Constitution, therefore, a free pass includes any form of ticket or mileage entitling the holder to travel issued to the holder as a gift or in consideration or partial consideration of any service performed or to be performed by such holder except where such ticket or mileage is used by the holder in the performance of his duties as an employe of the entity issuing the pass. If the pass is used only for work, therefore, it is not a "free" pass. *Page 243 
The word "frank" is generally understood as the right to send something free of postage or other conditions. Webster's Third New International Dictionary 902-03 (1976). "Privilege" is generally understood as a right, advantage or favor especially granted to a certain individual or group and withheld from certain others. Webster's Third New International Dictionary 1805 (1976). In 1975, section 946.11 was amended to define "privilege" as it was then defined in section 11.40. That statute was created in 1973. The statutory definition is consistent with the dictionary definition and defines "special privilege" or "privilege" as any thing of value not available to the general public.
Under the canon of statutory construction, ejusdem generis, the meaning of a general phrase or word following enumeration of specific classes should be limited to matters of the same kind as those enumerated. Cheatham v. State, 85 Wis.2d 112, 116,270 N.W.2d 194 (1978). "Privilege," therefore, must be read in the same context as "free pass" or "frank." The word was not intended to expand the prohibition beyond the type of gratuity prohibited by free pass or frank. Rather, it was intended to prohibit those gifts which were not absolutely free but were substantial nevertheless. Therefore, a railroad pass given to a legislator at a substantial discount not available to the general public would be a "privilege withheld from any person, for the traveling accommodation or transportation of any person or property." Similarly, the provision of special accommodations at less than full price, if those accommodations were not available to the general public at the same price, would be prohibited. For example. a railroad could not charge a legislator the normal fare and provide that legislator with deluxe accommodations.
Article XIII, section 11 of the Wisconsin Constitution prohibits the giving of any free pass, frank or privilege involving traveling accommodation, or transportation of any person or property, or the transmission of any message or communication to any of the listed offices and positions, including all state officers and employes. The section's prohibitions are not limited to railroads or to public utilities. Rather, the section prohibits any person, business or corporation from offering or giving anything involving traveling accommodations or transportation for which it usually would charge. Therefore, an airline may not give a free pass to a state legislator and may not allow public officers or employes to travel first class at *Page 244 
tourist fares. Similarly, a taxi company or a bus company cannot give free passes or discounts. The section does not prohibit an individual, business or corporation from giving a public officer or employe a plane ride, bus ride or car ride if the person or entity furnishing that service does not usually charge for that service. Therefore, the Governor may accept a ride to a University of Wisconsin football game from his neighbor unless that neighbor owns a taxi company and provides the free ride in a taxi.
Article XIII, section 11 of the Wisconsin Constitution does not at all prohibit a person from reimbursing a state official or the State of Wisconsin for travel expenses that the official incurs in either his or her private capacity or public capacity, although other laws may restrict receipt of such reimbursement. The intent of the prohibitions in article XIII, section 11 of the Wisconsin Constitution was to prohibit bribery of public officials through gifts of transportation and traveling accommodation services; in short, to prohibit covert as well as overt bribery. Nothing in the section's language or history suggests that it was at all intended to restrict legitimate reimbursement of expenses or prohibit legitimate honoraria.
DJH:AL *Page 245